**CHICAGO NEWSPAPER PUBLISHERS ASSN., Chicago Tribune Co., an Illinois corporation, Chicago Sun–Times, Inc., a Delaware corporation, and Dow Jones & Company, Inc., Plaintiffs,**

v.

**CITY OF WHEATON, an Illinois municipality, Defendant.**

No. 87 C 0765.

United States District Court, N.D. Illinois, E.D.

Oct. 12, 1988.

James A. Klenk, Alan J. Mandel, Sonnenschein, Carlin, Nath & Rosenthal, Joseph P. Thornton, Chicago Tribune Co., Chicago, Ill., for plaintiffs.

Edward J. Walsh, Jr., James H. Knippen II, Edward J. Walsh, Jr., Chtd., Wheaton, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In our participatory democracy newspapers are not just an amenity. They are a vital means of providing information to citizens called upon to exercise an enlightened use of the ballot. Without the information provided by newspapers many citizens would be without the knowledge required for an intelligent electoral process. Accordingly, the distribution of newspapers has always had First Amendment protection.

The methods of newspaper distribution are changing. For some, home delivery is either unavailable or too expensive. Street vendors are disappearing in all but central business areas, and newsracks are appearing as a substitute means of distribution. This case concerns issues arising out of the regulation or prohibition of newsracks on public streets in a suburban area.

This is a challenge to an ordinance which regulates the placement of newsracks in Wheaton, Illinois. Plaintiffs attack the ordinance on its face as an abridgement of the rights under the First and Fourteenth Amendments, and under the Illinois Constitution. Defendant City of Wheaton responds that the ordinance imposes valid time, place, and manner restrictions permitted under the First Amendment. Plaintiffs also claim that Wheaton officials confiscated newsracks without due process, in violation of the Fifth and Fourteenth Amendments. To this, Wheaton counters that the newsracks were confiscated because they posed a threat to driver and pedestrian safety. The parties have filed cross motions for summary judgment.

For the reasons outlined below, the licensing scheme is an invalid prior restraint. In addition, the complete ban on residential newsracks is an invalid place and manner restriction.

## FACTS

On April 7, 1986, defendant City of Wheaton, Illinois ("Wheaton") passed on ordinance regulating the placement of newspaper dispensing devices ("newsracks") on Wheaton city streets. This ordinance was similar to an ordinance passed in Lakewood, Ohio. Three months later, in July 1986, the Sixth Circuit ruled that several provisions of the Lakewood ordinance were unconstitutional. *Plain Dealer Publishing Co. v. City of Lakewood*, 794 F.2d 1139 (6th Cir.1986), *aff'd in part & remanded*, — U.S. —, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Six weeks after the Sixth Circuit decision, Wheaton amended its ordinance, deleting some of the language which proved fatal to the Lakewood ordinance.[1] In January 1987, plaintiff newspapers brought this § 1983 action in Illinois state court, alleging a violation of their rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and under the Illinois Constitution. Wheaton removed to this court.

At the close of discovery, both sides moved for summary judgment. Because of the similarity between the Wheaton and Lakewood ordinances, this court deferred ruling on the motions until the Supreme Court decided Lakewood's appeal from the Sixth Circuit. In June of this year, the Supreme Court affirmed the Sixth Circuit. *City of Lakewood v. Plain Dealer Publishing Co.*, — U.S. —, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Both Wheaton and the newspapers then renewed their summary judgment motions.

## LEGAL PRINCIPLES

It is beyond dispute that the First Amendment protects the right to distribute newspapers in newsracks. *City of Lakewood v. Plain Dealer Publishing Co.*, — U.S. —, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Gannett Satellite Info. Network, Inc. v. Metropolitan Transportation Authority*, 745 F.2d 767, 777 (2d Cir.1984); *Miami Herald Publishing Co. v. City of Hallandale*, 734 F.2d 666, 673 (11th Cir. 1984). The degree of protection provided by the constitution depends "on the character of the property at issue." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). In this case, the "property at issue" is city streets in Wheaton, Illinois. The Supreme Court has repeatedly recognized public streets "as the archetype of a traditional public forum." *Frisby v. Schultz*, — U.S. —, 108 S.Ct. 2495, 2499, 101 L.Ed.2d 420 (1988).

In these traditional public fora, government's authority to restrict speech is at its minimum. Time, place, and manner restrictions are valid only if they are content-neutral, narrowly tailored to serve a significant government interest, and retain ample alternative channels of communication. *Perry*, 460 U.S. at 45, 103 S.Ct. at 954. As an application of the requirement that restrictions be narrowly tailored, a law cannot condition the free exercise of First Amendment rights on the unguided discretion of government officials. *Lakewood*, 108 S.Ct. at 2143; *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969) ("a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without *narrow, objective and definite standards to guide the licensing authority*, is unconstitutional" (emphasis added)); *Staub v. City of Baxley*, 355 U.S. 313, 321–22, 78 S.Ct. 277, 281–82, 2 L.Ed.2d 302 (1958). And finally, any licensing system which operates as a prior restraint "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed. 2d 649 (1965); *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 675 (11th Cir.1984).

Against the backdrop of these legal principles, the court turns to a consideration of the Wheaton ordinance.

## DISCUSSION

### I. Due Process—Prior Restraint

■ Plaintiffs attack the licensing scheme as an unlawful prior restraint. The

---

1. The relevant portions of the Wheaton ordinance are reproduced in the Appendix.

Supreme Court has often articulated the elements of a prior restraint. First, the right to engage in the protected speech must require the prior approval of a government agent. Approval of the application must depend on the agent's affirmative action. In addition, approval must not be routinely granted but rather must require the exercise of the agent's judgment. Finally, the licensing scheme must empower the agent to approve, deny or revoke a license based on the content of the proposed communication. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 554, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1976).

The first two elements are plainly met here: the ordinance requires an application to the Wheaton city manager who must act on the application within ten days. Sec. 20–147(1); (3). Wheaton contends, however, that the remaining elements are absent: approval is not discretionary, and the city manager has no express authority to deny an application based on the content of the applicant's paper. Wheaton is mistaken on both counts.

First, the decision to issue a license is indeed discretionary. The ordinance lists a number of conditions which the applicant must meet before a license can issue. Prominent among them are the following:

Newspaper dispensing devices shall be placed adjacent and parallel to building walls not more than six inches (6") distant therefrom or near and parallel to the curb not less than eighteen inches (18") and not more than twenty-four inches (24") distant from the curb *at such locations applied for and determined by the city manager not to cause a health or safety hazard or interfere with the right of the public to use of the streets, throughfares, and sidewalks.*

Sec. 20–148(2) (emphasis added).

No newspaper dispensing device shall be placed, installed, located, used, or maintained:

\*   \*   \*   \*   \*   \*

(e) Within five hundred feet (500') of another newspaper dispensing device ..., except that the city manager may permit three (3) such dispensing de-

vices at an intersection *where such placement would not impair traffic or otherwise create a hazardous condition....*

Sec. 20–148(3)(e) (emphasis added).

The significance of the first passage is that, even if all other conditions are satisfied, the city manager may still withhold a permit if it is determined that the newsrack creates a "health or safety hazard or interferes with the right of the public" to use the streets and sidewalks. In his deposition, the current city manager conceded that this was at least in part a subjective determination, Rose dep. at 36, and Wheaton has pointed to no standards which guide his judgment. The second passage requires essentially the same subjective determination and is equally flawed.

Furthermore, the ordinance authorizes the city manager to revoke a permit for "[v]iolation of any city ordinance," or for "[f]raud, misrepresentation, or any false statement" in the application itself. Recently the Eleventh Circuit considered the constitutionality of an ordinance regulating newsracks which contained similar provisions. *Miami Herald,* 734 F.2d at 673–74. As in this case, the city code before the court of appeals gave the municipality the authority to revoke newsrack permits for the violation of any city ordinance. *Id.* The city commission was authorized "to adjudicate the rights of license applicants ... to determine if the applicant has violated a provision" of the city code. This, the court concluded, "necessarily involves the exercise of considerable discretion" and was therefore improper under the First Amendment. *Id.* The same reasoning applies here, and leads to the same conclusion: the city manager determines whether a violation has occurred. And, since revocation is not automatic, the city manager must next determine which violations warrant revocation. This is indeed "considerable discretion" and cannot be squared with the First Amendment.

In response, Wheaton contends that these provisions authorize only "limited discretion" "reviewable by both common sense and a reasonable man standard."

But the cases do not support a "limited discretion" standard. *Shuttlesworth*, 394 U.S. at 150–51, 89 S.Ct. at 938 (law must provide *"narrow, objective and definite standards* to guide the licensing authority...." (emphasis added)); *Swearson v. Meyers*, 455 F.Supp. 88, 91 (D.Kan.1978) (permit system must "leave no factors to be assessed, judgments to be made, or discretion to be exercised.... [T]he decision to grant or deny the license application must be virtually a ministerial one.") *quoted in Miami Herald*, 734 F.2d at 675.[2] Furthermore, even if "health or safety hazard" were narrowed to mean a violation of the objective measurements in Sec. 20–148(3), e.g. no newsracks less than fifteen feet from a fire hydrant, etc., the ordinance still vests the city manager with discretionary authority to revoke permits, as noted above. Finally, discussed *infra*, the ordinance does not provide for judicial review.

The licensing decisions are discretionary. The next question in determining if the ordinance is a prior restraint is whether decisions are based on the content of the applicant's paper. Wheaton contends that decisions are content-neutral because the ordinance applies to all newsracks. But that misstates the inquiry. The Supreme Court has uniformly recognized that an act can be a prior restraint even though, by its terms, it does not favor one speaker over another. *See, e.g., Southeastern Promotions*, 420 U.S. at 558, 95 S.Ct. at 1246; *Shuttlesworth*, 394 U.S. at 150–51, 89 S.Ct. at 938–39; *Staub*, 355 U.S. at 321–22, 78 S.Ct. at 281–82.

The question is not whether the ordinance expressly favors certain speakers (although that would also be improper), but whether the discretion built into the ordinance raises the specter of content-based

censorship. *Freedman v. Maryland*, 380 U.S. at 58, 85 S.Ct. at 738; *Miami Herald*, 734 F.2d at 675; *Fernandes v. Limmer*, 663 F.2d 619, 627–28 (5th Cir.1981), *cert. denied*, 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed. 2d 1395 (1982); *Rubin v. City of Berwyn*, 553 F.Supp. 476, 480 (N.D.Ill.1982), *aff'd*, 698 F.2d 1227 (7th Cir.1982). The ordinance does precisely that. In this respect, the Wheaton ordinance "is indistinguishable in its censoring effect from the official actions consistently identified as prior restraints in a long line of this court's decisions." *Southeastern Promotions*, 420 U.S. at 552, 95 S.Ct. at 1243 (collecting cases). "Only if we were to conclude that [distribution of newspapers] is unprotected by the First Amendment ... could we possibly find no prior restraint here." *Id.* at 557, 95 S.Ct. at 1246; *see also Miami Herald*, 734 F.2d at 675.

■ The fact that the ordinance is a prior restraint does not end the inquiry. A prior restraint is not *per se* unconstitutional. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 n. 10, 83 S.Ct. 631, 639 n. 10, 9 L.Ed.2d 584 (1963). The next question is the adequacy of procedural safeguards. The ordinance must require that the licensor grant or deny the permit within a specified, brief period, it must provide for prompt judicial review, and, if a license is denied or revoked, the burden must be on the licensor to institute judicial proceedings to prove that the material is unprotected. *Southeastern Promotions*, 420 U.S. at 560, 95 S.Ct. at 1247; *Freedman*, 380 U.S. at 58, 85 S.Ct. at 738.

The necessary safeguards do not appear in this ordinance. Initially, though the law allows an applicant to appeal an adverse decision by the city manager to the Whea-

---

**2.** The opinion of the California Supreme Court in *Kash Enterprises v. City of Los Angeles* is not to the contrary. 19 Cal.3d 294, 138 Cal.Rptr. 53, 562 P.2d 1302 (1977). One provision of the ordinance challenged in *Kash* stated that newsracks may not "unreasonably interfere with or impede the flow of pedestrian traffic." 138 Cal. Rptr. at 59, 562 P.2d at 1308. The court upheld this provision. The challenge, however, was that the language was vague and overbroad, and *not* that it vested discretion in government offi-

cials. The holding today is the opposite. There is no inconsistency in the two holdings. Language may be precise and clear, but still vest discretion in municipal authorities. *See ACORN v. City of Tulsa, Okla.*, 835 F.2d 735, 741 (10th Cir.1987) (ordinance which permits municipality to decide which structures violate the law vests unguided discretion in government and is unconstitutional, even though language is not vague).

ton City Council, there is no time limit by which the city council must hear an appeal. Thus the "right" to appeal is in fact discretionary, and a permit application can "languish indefinitely before the Council"—a feature recently criticized by the Supreme Court when it struck down the *Lakewood* ordinance. *Lakewood*, 108 S.Ct. at 2151.

More importantly, the ordinance does not provide for judicial review of the administrative decision to grant, deny, or revoke a permit. In Illinois, the Administrative Review Act is not applicable unless clearly adopted by the legislature which provided for the administrative decision. Ill.Rev. Stat. ch. 110, 3–102 (1988). *Wilkins v. State Dept. of Public Aid*, 51 Ill.2d 88, 280 N.E.2d 706, 708 (1972); *Sullivan v. Board of Fire and Police Commissioners*, 103 Ill.App.3d 167, 58 Ill.Dec. 604, 607, 430 N.E.2d 636, 639 (1981). Nowhere does this ordinance adopt that Act. In addition, there is no provision requiring Wheaton to institute judicial proceedings to prove the conduct is unprotected. These omissions are fatal to the licensing scheme.[3] *See* Ball, *Extra! Extra! Read All About It: First Amendment Problems in the Regulation of Coin Operated Newspaper Vending Machines.* 19 Colum.J.L. & Soc. Probs. 183, 202–204 (1985).

*II. Ban On Residential Newsracks*

■ Because the licensing scheme vests Wheaton officials with the unguided discretion to control the placement of newsracks, and because the ordinance lacks the procedural safeguards to guard against abuse of that discretion, it is unconstitutional. However, another provision of the ordinance bans all newsracks in residential zoning districts of Wheaton. Sec. 20–148(1). This, obviously, involves neither a prior application nor municipal discretion. In other words, validity of the residential ban is unaffected by the first part of this opinion. Plaintiffs challenge this provision as well.

Residential streets are traditional public fora and their character as residential does not change their status under the First Amendment. *Frisby v. Schultz*, —— U.S. ——, 108 S.Ct. 2495, 2499–2500, 101 L.Ed. 2d 420. Consequently, the ban on residential newsracks must be examined under the familiar standard: the restriction must be content-neutral, it must be narrowly tailored to serve a significant government interest, and it must leave open ample alternative channels of communication. *Perry*, 460 U.S. at 45, 103 S.Ct. at 954.

A. Content–Neutral

The ban on residential newsracks applies equally to all newsracks and is therefore content-neutral on its face. *See Gannett*, 745 F.2d at 773; *Miami Herald*, 734 F.2d at 673–74; *Providence Journal Co. v. City of Newport*, 665 F.Supp. 107, 112 (D.R.I. 1987). Plaintiffs suggest otherwise, alleging that Wheaton has not enforced the ban against the *Wheaton Daily Journal.* But that allegation challenges the ordinance as applied, and in their motion for summary judgment, plaintiffs adequately raise only facial challenges.

B. Narrowly Tailored

Wheaton must demonstrate that there is a significant relationship between the regulation and the governmental interest, *and* that the means employed are the least restrictive available. *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1554 (7th Cir.1986), *aff'd*, 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987). In enacting a total ban on residential newsracks, Wheaton has not demonstrated that they have adopted the least restrictive means available. Consequently, the total ban is unconstitutional.

The object of the ordinance appears in the preamble. The ordinance is designed to promote "motor vehicle and pedestrian safety" and to maintain the "residential character of the Residential Zoning Districts." As to the former, Wheaton cannot claim that only a total ban will adequately provide for driver and pedestrian safety, since all other city streets are also potential sites for a newsrack. The ordinance per-

---

**3.** It may also be that the ten day waiting period before which the city manager must act is not sufficiently brief. The court does not reach the issue. It is not clear, however, why inspecting the site for compliance with objective measurements would require ten days.

mits newsracks in non-residential districts, provided they are properly placed (e.g. not within 15 feet of a fire hydrant, not within five feet of a marked crosswalk, etc.).

The second goal of the ordinance is to preserve the "residential character" of Wheaton neighborhoods. Wheaton claims this goal reflects a concern for neighborhood aesthetics. Granted, neighborhood aesthetics are a significant government interest. *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806–07, 104 S.Ct. 2118, 2129–30, 80 L.Ed.2d 772 (1984). However, it does not follow that a complete ban is the least restrictive means of achieving the goal. Wheaton has not explained—much less demonstrated—how a newsrack on a residential street destroys the "character" of the neighborhood any more than a mailbox, utility pole, fire hydrant, or traffic sign. As one court recently observed, "[i]f newsracks alone are banned and no further steps appear likely, 'the commitment of the city to improving its physical environment is placed in doubt.'" *Providence Journal Co. v. City of Newport,* 665 F.Supp. 107, 115 (D.R.I.1987) (quoting *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 531–32, 101 S.Ct. 2882, 2904–05, 69 L.Ed.2d 800 (1981) (Brennan, J., concurring)). *See also* Quadres, *Content–Neutral Public Forum Regulations: The Rise of the Aesthetic State Interest, the Fall of Judicial Scrutiny,* 37 Hastings L.J. 439, 474–780 (1986). Aesthetic judgments are "necessarily subjective," *Metromedia,* 453 U.S. at 510, 101 S.Ct. at 2894, and Wheaton cannot simply raise the banner of aesthetic interest, and then leave it to this court to determine not only how the ordinance advances those interests, but why a total ban is necessary. *See Southern New Jersey Newspapers v. New Jersey,* 542 F.Supp. 173, 186 (D.N.J. 1982); Quadres, *supra* at 466, 468–76. The burden is on Wheaton to show that the ordinance is narrowly tailored, and it has failed to carry that burden.

### C. Ample Alternative Channels

Wheaton claims alternative channels are more than sufficient. It points to the availability of home delivery, commercial outlets, and "numerous newsboxes which are legally eligible for permits." These channels are inadequate to justify a complete ban on residential newsracks.

First, a person cannot selectively subscribe to home delivery of plaintiffs' papers. The person who relies on newsracks to purchase an occasional paper must pay considerably more to subscribe to a particular paper. And when alternative channels are not readily available, "the Court has shown special solicitude for forms of expression that are much less expensive than feasible alternatives...." *Taxpayers for Vincent,* 466 U.S. at 812 n. 30, 104 S.Ct. at 2133 n. 30; *Martin v. City of Struthers,* 319 U.S. 141, 146, 63 S.Ct. 862, 864, 87 L.Ed. 1313 (1943). Furthermore, though plaintiff newspapers provide home delivery, the ordinance bans *all* newsracks in residential districts. This includes the small, poorly funded press, without the resources to provide home delivery, but with the same claim to the protections of the First Amendment.

Moreover, the availability of private sellers is irrelevant. The First Amendment does not allow a municipality to restrict speech on the grounds that private actors are willing to sponsor it. *See Providence Journal Co. v. City of Newport,* 665 F.Supp. at 118. If this were the rule, then the rights safeguarded by the First Amendment would be in the hands of private businesses. In other words, if private sellers are an adequate alternative channel under the Constitution, then an ordinance which is constitutional today becomes unconstitutional tomorrow, when those sellers close, relocate, or elect not to sell newspapers. The protections of the First Amendment cannot be so transitory.

Wheaton, however, relies on the opinion of the Sixth Circuit in *Lakewood,* which upheld a residential ban on newsracks. The Court of Appeals relied in part on the availability of commercial sellers. 794 F.2d at 1147. But unlike the situation in *Lakewood,* where no residence was more than one-quarter mile from a newsrack, 794 F.2d at 1147, the parties here agree that some residential neighborhoods in Wheaton are a

full three miles from a newsrack. To this, Wheaton responds that several newsracks are available in the area around Wheaton. But Wheaton cannot rely on other municipalities to rescue them from the consequences of an improperly drawn ordinance. *Cf. Schneider v. State*, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised is some other place.") These neighboring municipalities have the same right as Wheaton to enact valid time, place, and manner restrictions on the placement of newsracks. These restrictions could well reduce the number of newsracks surrounding Wheaton. If Wheaton's view of the law were correct, then the effect of the neighboring ordinance would be to imperil the constitutionality of the Wheaton ordinance. Wheaton cannot condition the exercise of First Amendment freedoms on events and conditions outside of Wheaton any more than it can rely on private sellers to guarantee the expression which Wheaton has abridged.

Valid place and manner restrictions on residential newsracks may well be different than those appropriate to commercial areas, but Wheaton has not made a showing which justifies the total ban enacted in this ordinance.

### III. Rental Permit Fee

■ The holdings stated above are sufficient to invalidate the entire ordinance. That notwithstanding, to preserve judicial resources, and to guide Wheaton's subsequent efforts, the court analyzes one other provision: § 20–148(4), the rental permit fee. Wheaton charges an initial fee of $25 per newsrack installed, as well as an annual renewal fee of $15 per newsrack. The newspapers challenge these fees as an unconstitutional tax on their First Amendment rights.

Licensing fees are permissible, but a municipality can charge no more than the amount needed to cover administrative costs. *Cox v. New Hampshire*, 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049

(1941); *Gannett*, 745 F.2d at 774; *Fernades v. Limmer*, 663 F.2d 619, 633 (5th Cir.1981), *cert. denied*, 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982).

The administration of this ordinance is somewhat convoluted. According to Wheaton, applications are submitted to the city manager's secretary, who forwards it to the city manager. He then sends his assistant to inspect the proposed site for conformity with the ordinance. After the assistant reports back, the city manager then approves or disapproves the application. The yearly renewal fee covers reinspection costs. Annually, the city manager receives $65,500, his assistant roughly $26,000, and his secretary $27,000.

Wheaton claims that the time it takes to complete these tasks, performed by employees at these salaries, justify the fee. But the newspapers note several undisputed points in the record which undermine Wheaton's claim. First, it is apparent that Wheaton does not know what it costs to administer the program. For instance, before the vote on the ordinance one City Councilman asked the city "to take a look at all of our paper generation regarding the permits like this so ... in the future we'll actually know what it costs us.... [S]o when we do establish a fee, it would accurately reflected (sic) upon our actual costs. I don't think we really know...."

The Councilman went on to speculate that a $25 fee "really isn't that far off ..." but there is reason to doubt him. Before Wheaton passed the ordinance, the assistant city manager surveyed 27 communities in the area. He discovered that only two charged fees for newsracks. Of those two, one city charged $15 per newsrack, and the other $10. Based on that survey, the assistant recommended lowering the fee in Wheaton to either $10 or $15.

In response, Wheaton says that the process is more expensive because it requires the time and attention of several employees, including the city manager, who is relatively well paid. But this overlooks several things. Wheaton issues licenses for approximately 30 different activities. Rose deposition, 70. The *only* license

which receives the personal attention of the city manager is the newsrack license. *Id.* The rest are administered by either the city manager's assistant or his secretary. And the city manager conceded that his secretary was perfectly able to monitor the permit system for newsracks. In light of these points, the newspapers asked the current city manager why he had to administer this particular ordinance, and no other. He said that was "[j]ust the way we decided to set it up." *Id.* at 71.

Alternatively, he could have pointed out that the ordinance called upon him to make several discretionary determinations. But those provisions are invalid. Measuring compliance hardly requires the time and expertise of senior city officials. Wheaton is of course free to determine the duties of its employees and may leave the administration of this program with the city manager. But Wheaton is not free to enact and administer unconstitutional restrictions on speech and then charge those whose speech is restricted to pay for the time it took.

### IV. Other Issues

■ The remaining issues may be dealt with briefly. First, plaintiffs argue that when Wheaton confiscated *Tribune* and *Sun–Times* newsracks in March 1986, it deprived the newspapers of their rights under the First, Fifth, and Fourteenth Amendments. Wheaton admits confiscating the boxes, but argues that the newsracks obstructed the sidewalk and created an imminent safety risk.

Plaintiffs' motion for summary judgment is denied here. If the newsracks in fact created an imminent safety risk, Wheaton could summarily confiscate them. The Court has repeatedly upheld summary administrative action in emergency situations, and "deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action." *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300, 101 S.Ct. 2352, 2373, 69 L.Ed.2d 1 (1981) (quoting *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599, 70 S.Ct.

870, 873, 94 L.Ed. 1088 (1950)). Wheaton claims that the newsracks created an immediate risk, and plaintiffs offer nothing to the contrary. On this record, summary judgment is improper.

■ Plaintiffs also claim they are entitled to attorney's fees for legal work needed to resist the initial newsrack ordinance passed by Wheaton. They argue that Wheaton amended the initial ordinance in response to a letter written by plaintiffs' counsel. This, they claim, makes them a prevailing party for the purposes of § 1988. Plaintiffs' claim is denied.

A party may prevail without formal judicial relief. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *In re Burlington Northern, Inc. Employment Practices Litigation*, 832 F.2d 422, 425 (7th Cir.1987). To prevail in a settled case, the actions taken by the plaintiff must be causally linked to the relief obtained. *Burlington Northern*, 832 F.2d at 425. The causal connection, however, is a factual determination. *Id.; Harrington v. DeVito*, 656 F.2d 264, 267 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). Here, plaintiffs cannot establish the necessary causal connection, since Wheaton insists the ordinance was amended in response to the Sixth Circuit decision in *Lakewood*. Wheaton's position is certainly tenable, since the original ordinance was so strikingly similar to the ordinance disapproved by the Sixth Circuit. In addition, the changes made by Wheaton correspond more closely to the opinion of the Sixth Circuit than to counsel's letter. For instance, counsel warned against the residential ban. The Sixth Circuit upheld this ban, and the amended Wheaton ordinance included it. On a motion for summary judgment, disputed facts are resolved against the movant. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). Consequently, plaintiffs' motion for summary judgment on this point is denied.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion for summary judgment is granted in part and denied in part.

(2) Defendant's motion for summary judgment is denied.

(3) A status hearing is set for November 10, 1988 at 9:15 a.m.

APPENDIX

ORDINANCE NO. E–3147

AN ORDINANCE AMENDING THE WHEATON CITY CODE—VENDING AND NEWSPAPER DISPENSING DEVICES AND AMENDING ORDINANCE NO–E–3088

Section 1: City of Wheaton Ordinance No. E–3088, "AN ORDINANCE AMENDING THE WHEATON CITY CODE—VENDING AND NEWSPAPER DISPENSING DEVICES", is amended by deleting the terms and provisions thereof in their entirety; and the Wheaton City Code is amended by adding and including therein the following:

"ARTICLE VII. VENDING AND NEWSPAPER DISPENSING DEVICES

Sec. 20–147. Newspaper dispensing devices; application and permit.

(1) No newspaper dispensing device shall be placed or located within a public or private right-of-way, along the streets, thoroughfares, or sidewalks within the City of Wheaton unless a permit has previously been issued therefor by the city. The term 'newspaper dispensing device', as used in this section, shall mean a mechanical, coin-operated container, constructed of metal or other material of substantially equivalent strength and durability, not more than fifty inches (50″) in height and not more than twenty-five inches (25″) in length and width.

(2) Applications for such permit may be made to, and on forms approved by, the city manager for rental permits allowing for the installation and placement of newspaper dispensing devices within the public and private right-of-way, along the streets, thoroughfares, and sidewalks within the city.

(3) Within ten (10) days of receipt of an application for a permit, the city manager shall grant the application and issue the permit provided that the conditions contained in Section 20–148 of this ordinance are, where applicable, complied with. In the event the terms and conditions of Section 20–148, where applicable, are not complied with, the city manager shall, within ten (10) days of receipt of an application for a permit, deny the application, stating the reasons for such denial.

Sec. 20–148. Rental permit conditions.

The newspaper dispensing device rental permit shall be subject to, and granted upon, the following conditions, restrictions, and requirements:

(1) Newspaper dispensing devices shall not be placed in the residential zoning districts of the city.

(2) Newspaper dispensing devices shall be placed adjacent and parallel to building walls not more than six inches (6″) distant therefrom, or near and parallel to the curb not less than eighteen inches (18″) and not more than twenty-four inches (24″) distant from the curb at such locations applied for and determined by the city manager not to cause a health or safety hazard or interfere with the right of the public to use of the streets, thoroughfares, and sidewalks.

(3) No newspaper dispensing device shall be placed, installed, located, used, or maintained:

a. Within fifteen feet (15′) of any fire hydrant or other emergency facility;

b. Within fifteen feet (15′) of any intersecting driveway, alley, or street;

c. Within five feet (5′) of any marked crosswalk;

d. At any location where the width of paved clear space in any direction for the passageway of pedestrians is reduced to less than five feet (5′);

e. Within five hundred feet (500′) of another newspaper dispensing device containing the same newspaper or news periodical, except that the city manager may permit three (3) such dispensing devices at an intersection where such placement would not im-

pair traffic or otherwise create a hazardous condition;

f. Any location where three (3) newspaper dispensing devices are already located;

g. So as to be chained, or otherwise secured, to any tree, utility, or light pole, parking meter, traffic control post, street sign post, or other public property;

h. On or within any median within any public or private right-of-way.

4. The permittee shall pay an initial rental permit fee of TWENTY–FIVE DOLLARS ($25.00) for each location where a newspaper dispensing device is installed. The initial rental permit fee shall be applicable to the initial license year, or part thereof. The permittee shall pay a renewal rental permit fee of FIFTEEN DOLLARS ($15.00) per year for each location where a newspaper dispensing device is installed.

Sec. 20–149. Revocation of permits.

Rental permits issued pursuant to this Article may be revoked by the city manager after notice and hearing for any of the following causes:

(1) Fraud, misrepresentation, or any false statement contained in the application for permit;

(2) Violation of any city ordinance, including the ordinance regulating such rental permit;

(3) Violation of the terms of the rental permit granted to permittee.

Notice of hearing of such revocation shall be given in writing to permittee stating the grounds of the complaint together with the time and place of hearing and shall be mailed, postage prepaid, to the permittee to the address given in the rental permit application not less than five (5) days prior to the date set for hearing.

The decision of the city manager in refusing to grant, or revoking, a rental permit shall be appealable. The permittee shall have the right to appeal the decision of the city manager to the city council. Such appeal shall be taken by filing a notice of appeal including a statement of the grounds for the appeal with the city clerk within ten (10) days after notice of the decision of the city manager. The city council shall set the time and place for hearing such appeal, and notice of such time and place shall be given in the same manner as specified herein. The city council shall have the power to reverse, affirm, or modify the decision of the city manager; and any such decision by the city counsel shall be final.

*Section 2:* If any section, sub-section, clause, or phrase of this ordinance is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance."