CHICAGO TRIBUNE COMPANY, Chicago Sun–Times, Inc., Gannett Satellite Information Network, Inc., Dow Jones & Company, Inc., and the New York Times Company, Plaintiffs,

v.

CITY OF CHICAGO and American Airlines, Inc., Defendants.

No. 89 C 643.

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1989.

James Klenk, Dale Cohen, Alan Mandel, Jacqueline Glassman, Sonnenschien, Carlin, Nath & Rosenthal, Chicago, Ill., for plaintiffs Chicago Tribune Co., Gannett Satellite Information Network, Dow Jones & Co., Inc. and The New York Times Co.

Lawrence Levin, Damon Dunn, Vance Liebman, Levin & Funkhouser, Chicago, Ill., for plaintiff Chicago Sun–Times, Inc.

Robb M. Jones, Nixon, Hargrave, Devans & Doyle, Washington, D.C., additional counsel for plaintiff Gannett Satellite.

Judson H. Miner, Terence J. Moran, Sharon Tiller, Eileen Brewer, Corp. Counsel, Chicago, Ill., for defendant City of Chicago.

Russell M. Pelton, M. Patricia Chapin, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., and William H. Boice, Kilpatrick & Cody, Atlanta, Ga., for defendant American Airlines, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONLON, District Judge.

Plaintiffs Chicago Tribune Company, Chicago Sun–Times, Inc., Dow Jones & Company, Inc., The New York Times Company and Gannett Satellite Information Network, Inc. (collectively, "plaintiffs" or "the newspapers") move for a preliminary injunction to prohibit defendants City of Chicago ("the city") and American Airlines ("American") from seizing or relocating coin-operated newsboxes from the passen-

ger concourse area of Terminal 3 at O'Hare International Airport. After reviewing the affidavits and exhibits and considering the memoranda and arguments of counsel, the court enters the following findings of fact and conclusions of law, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

All plaintiffs sell their newspapers directly to the traveling public through coin-operated vending machines or newsboxes in Terminal 3 at O'Hare. Plaintiffs' newspapers have thereby been available to the traveling public every day at virtually any time, day or night, for an undetermined number of years. Plaintiffs' newspapers are also sold in Terminal 3 by privately owned retail concessionaires or newsstands operated by W.H. Smith under contractual arrangements with the city and American. The newsstands resell plaintiffs' newspapers, and various other items, to the public during certain business hours disputed by the parties.

The city and American operate and maintain the passenger walkways to the gates in Terminal 3 known as the H and K concourses. Newsboxes utilized by plaintiffs for many years in the H and K concourses of Terminal 3 are located within a secured area; any person purchasing newspapers from these boxes first must pass through a security checkpoint. The newsboxes were placed inside the secured area as a safety precaution at the request of the Federal Aviation Administration ("FAA"). The design and color of the newsboxes were approved by the city's Department of Aviation some time ago.

American is in the process of remodeling the H and K concourses of Terminal 3 at a cost of approximately $329,000,000. On January 5, 1989, American removed most of plaintiffs' newsboxes from the remodeled stem area of the H and K concourses without prior notice to plaintiffs. This action was taken pursuant to a plan to eliminate all newsboxes from O'Hare, announced some time ago by the city's Department of Aviation. According to this plan, newspapers would be sold only by concessionaires who produce revenue for the city and the airlines. After plaintiffs protested the January 5th seizure, American and the city agreed to allow the placement of one newsbox for each of the five newspapers in a visually inaccessible alcove off the public walkway where the H and K concourses meet in a "Y" formation ("the stem area"). At a meeting on January 19, 1989, the city and American notified plaintiffs that they must remove all remaining newsboxes from the stem area of Terminal 3 by January 25, 1989. Plaintiffs were temporarily permitted to leave 37 newsboxes in concourse H and 39 newsboxes in concourse K until the newsboxes are replaced by concessionaires according to the defendants' joint plan.

On January 25, 1989, this court issued a temporary restraining order to reinstate the *status quo:* plaintiffs were permitted to replace the seized or relocated newsboxes to their original site in the stem area, and defendants were prohibited from removing any newsboxes until plaintiffs' motion for a preliminary injunction could be heard on February 3, 1989.

American claims that plaintiffs' newsboxes interfere with its property and contract rights in the H and K concourses by siphoning revenue from authorized concessionaires who pay rent to American, by damaging and marring expensive wall panels, by impeding pedestrian traffic, by providing locations where terrorists may place bombs, and by aesthetically detracting from the appearance of American's remodeling efforts. Photographic exhibits submitted by plaintiff Chicago Sun–Times, however, illustrate that the stem area and the passenger walkways of the H and K concourses contain numerous potential safety hazards and unsightly conditions, such as abandoned service carts, free-standing waste receptacles, unsecured construction materials and equipment lockers, telephone booths, shoeshine stands, unlocked and unattended closets, public storage lockers, trash carts and various unattended objects protruding into public hallways and cluttering concession areas.

Although invited to do so at the hearing on plaintiffs' motion for a temporary restraining order on January 25, 1989, the city has not submitted any factually supported affidavits to establish their conclusory assertion that the newsboxes in Terminal 3 pose a threat to public safety. American submitted testimony from a New Jersey case to show that newsboxes create a general security risk, without reference to the specific circumstances presented by this case. Plaintiffs submitted the affidavit of John R. Baber, an independent security consultant who has had extensive training in terrorist activity as a former supervisor with the Federal Bureau of Investigation in Chicago. Baber is familiar with O'Hare and Terminal 3 and also has consulted other security experts familiar with airport and airline terrorist incidents. It is Baber's opinion that newsboxes within the secured H and K concourse areas of Terminal 3 do not present a significant security threat or risk. This is because newsboxes are subject to random and frequent access by the public and newspaper distribution personnel, in contrast with other containers in public areas where explosives could be hidden and not discovered quickly, such as coin-operated lockers, recessed trash receptacles, fire extinguisher closets and luggage carts. The FAA database and other historical data do not indicate that an explosive device has ever been hidden in an airport newsbox.

Newsboxes may be designed and configured to provide complete viewing of the interior and contents, thus eliminating concern that they may be used as a place for secreting explosive devices or other contraband. Plaintiffs have offered to redesign and reconfigure their newsboxes to meet defendants' security concerns and to maintain their newsboxes in locations that do not impede pedestrian traffic.

The parties dispute the extent to which the average daily sales of plaintiffs' newspapers have been affected by American's seizure and relocation of plaintiffs' newsboxes from January 5, 1989 to January 25, 1989. A reasonable inference may be drawn from plaintiffs' affidavits that sales decreased a significant degree, although the court is unable to make a precise determination based on the current state of the record.

## CONCLUSIONS OF LAW

This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343 and 2201 *et seq.*

■ The First Amendment protects the means of newspaper distribution as well as the content and ideas expressed in newspapers. The right to distribute and circulate newspapers includes use of newsboxes or newsracks. *City of Lakewood v. Plain Dealer Publishing Co.,* — U.S. ——, 108 S.Ct. 2138, 2150, 100 L.Ed.2d 771 (1988); *Chicago Newspaper Publishers v. City of Wheaton,* 697 F.Supp. 1464, 1466 (N.D.Ill.1988); *Miller Newspapers, Inc. v. City of Keene,* 546 F.Supp. 831, 833 (D.N.H.1982).

■ The standard applied in determining whether a total ban against newsboxes is constitutionally permissible depends upon whether the K and H concourses of Terminal 3 are classified as a public or a nonpublic forum for the activity involved. *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987). In a traditional public forum, governmental authority to restrict First Amendment activity is minimal. Restrictions are valid only if narrowly drawn to serve a significant governmental interest and if ample alternative channels of communication are provided. *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 41, 103 S.Ct. 948, 952–53, 74 L.Ed.2d 794 (1983). First Amendment access to a nonpublic forum may be regulated in any reasonable manner, as long as it is viewpoint-neutral. *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988).

■ It appears likely that plaintiffs will be able to establish that the city and Amer-

ican acted in concert to further a plan to ultimately seize and ban all newsboxes from a public forum (the secured, passenger walkways in Terminal 3 where newsboxes have been maintained for years) and that their action does not serve a significant governmental interest. It does not appear likely that defendants can establish that they were acting pursuant to a *bona fide* concern for public safety or that they have provided plaintiffs with ample alternative channels of communication. *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547, 1552–53 (7th Cir.1986). The availability of newspapers at privately operated concession stands authorized by defendants in Terminal 3 is constitutionally irrelevant. *Providence Journal Co. v. City of Newport,* 665 F.Supp. 107, 118 (D.R.I.1987); *Chicago Newspaper Publishers v. City of Wheaton,* 697 F.Supp. at 1470.

Defendants have not shown that the relatively unobtrusive manner in which plaintiffs exercise their First Amendment rights, by distributing their newspapers in a limited number of newsboxes, interferes with airport security or essential airport functions. *Compare Intern. Soc. for Krishna Consc. v. Rochford,* 585 F.2d 263, 268–69 (7th Cir.1978) (constitutionally permissible to bar the distribution of religious literature combined with solicitation of contributions in secured concourses where travelers are captive audience and space is limited).

Even if defendants were able to establish that the passenger walkways of Terminal 3 are not a traditional public forum, it appears likely that plaintiffs will be able to show that the concerted action of the city and American in restricting plaintiffs' First Amendment activity was unreasonable under the specific circumstances presented by this case.

Defendants' actions were not taken pursuant to any ordinance or regulation, narrowly drawn or otherwise. It therefore appears likely plaintiffs will succeed in their claim that the challenged conduct is an unconstitutional exercise of unfettered discretion and operates as a prior restraint on plaintiffs' First Amendment activities. *Miller Newspapers, Inc. v. City of Keene,* 546 F.Supp. 831, 835–36 (D.N.H.1982); *Chicago Newspaper Publishers v. City of Wheaton,* 697 F.Supp. at 1466–69.

Therefore, there is a reasonable likelihood plaintiffs will prevail on the merits. The denial of plaintiffs' First Amendment right to distribute and circulate their newspapers in a public forum constitutes an irreparable injury that cannot be remedied by monetary damages. *Jacobsen v. U.S. Postal Service,* 812 F.2d 1151, 1154 (9th Cir.1987); *O'Brien v. Town of Caledonia,* 748 F.2d 403, 409 (7th Cir.1984); *Citizens for a Better Environment v. City of Park Ridge,* 567 F.2d 689, 691 (7th Cir.1975). The threatened injury to plaintiffs' First Amendment rights outweighs any economic harm that the city or American may suffer due to lost revenue from the sale of newspapers by their authorized concessionaires or by alleged property damage. If proven, the claimed injuries to defendants may be compensated by monetary damages.

The public interest strongly favors a preliminary injunction where vindication of a First Amendment right to distribute and circulate newspapers is at issue. Plaintiffs have satisfied the requirements for issuance of a preliminary injunction. *Brunswick Corporation v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986). Therefore, a preliminary injunction shall issue restraining the City of Chicago and American Airlines from seizing or relocating plaintiffs' newsboxes in Terminal 3 pending resolution of the constitutional issues raised in this case.