TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-206 |
| of | : | |
| | : | June 6, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JOHN VASCONCELLOS, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a city ordinance prohibit the placement of all vending machines on public property located within the city?

CONCLUSION

A city ordinance may not prohibit the placement of all vending machines on public property located within the city to the extent that such prohibition would include newsracks.

ANALYSIS

The subject of this opinion request is a proposed city ordinance banning all vending machines[1] on public property located within the city's boundaries. Vending machines on privately-owned property would not be affected. We are advised that the proposed ordinance might have

_____

[1]Not being directed otherwise, we will adopt the definition of "vending machine" contained in Business and Professions Code section 17571:

"`Vending machine' means any mechanical device the operation of which depends upon the insertion of a coin or other thing representative of value in the denomination of five cents ($0.05) or more and which dispenses or vends a product, service, or exchange of equal value, other than telephone service furnished under public utility tariffs. The term shall not be construed to include any equipment used by a financial institution for the purpose of facilitating transactions, whether such equipment is located on the premises of the financial institution or at a location remote therefrom."

several purposes, minimizing problems created by vending machines with respect to matters of safety, esthetics, pedestrian movement, and the like.[2] We conclude that such an ordinance would not be sufficiently narrow in scope to pass constitutional muster.

The general authority of cities to adopt local ordinances is set forth in article XI, section 7 of the Constitution:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

This constitutional authority, often referred to as the "police power," is subject only to the limitations that it be exercised within territorial limits and be subordinate to state law. Apart from these limitations, a city's police power is as broad as the police power exercisable by the Legislature itself. (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140; 73 Ops.Cal.Atty.Gen. 28, 29-30 (1990); 73 Ops.Cal.Atty.Gen. 13, 13-14 (1990).)

Of course, the exercise of the police power by the Legislature or by cities and counties is subject to the limitations imposed by the state and federal Constitutions. Among these limitations is the requirement that where the legislation, whether statute or local ordinance, infringes upon a protected liberty, it must be narrowly drawn and further a substantial governmental interest. (*Schad* v. *Mount Ephraim* (1980) 452 U.S. 61, 68.) Here such an infringement would exist because the scope of the proposed ordinance would preclude the placement of newsracks in areas where they are traditionally present and serve as important means of conveying both commercial and noncommercial speech protected by the First Amendment. (See *City of Cincinnati* v. *Discovery Network, Inc.* (1993) 507 U.S. ____ [123 L.Ed.2d 99, 113 S.Ct. 1505].)[3] City sidewalks are considered a forum for public communication where governmental authority to restrict speech is at a minimum. As stated in *Chicago Newspaper Publishers* v. *City of Wheaton* (N.D. Ill. 1988) 697 F.Supp. 1464, 1466:

"It is beyond dispute that the First Amendment protects the right to distribute newspapers in newsracks. [Citations.] The degree of protection provided by the constitution depends `on the character of the property at issue.' [Citation.] In this case, the `property at issue' is city streets in Wheaton, Illinois. The Supreme Court has repeatedly recognized public streets `as the archetype of a traditional public forum.' [Citation.]

---

[2]We note that "every person who owns a vending machine shall have his name and address affixed thereto in a place where it may be seen by anyone using the machine," or "in the event that a person owns more than one vending machine located at the same place, such a person may as an alternative to the above, post a clearly readable sign containing his name and address in a conspicuous location near the machines," and that "[a]ny person who violates [this requirement] is guilty of a misdemeanor punishable by imprisonment in the county jail not to exceed six months, or of a fine not to exceed one thousand dollars ($1,000), or by both, for each violation." (Bus. & Prof. Code, §§ 17570, 17572.)

[3]The degree of First Amendment protection is not diminished merely because the newspaper is sold rather than given away. (*Pittsburgh Press Co.* v. *Human Rel. Comm'n* (1973) 413 U.S. 376, 385.)

"In these traditional public fora, government's authority to restrict speech is at its minimum. . . ."

Since the proposed ordinance would infringe on First Amendment rights associated with the distribution of newspapers in public areas, the issues to be resolved are whether the ordinance would be narrowly drawn and whether it would further a substantial government interest. Taking the latter question first, we will assume that the ordinance would advance some legitimate subject of government concern such as enhancing esthetics by reducing visual clutter or promoting public safety by minimizing hazards and facilitating pedestrian movement. Each of these objectives would, we assume, be furthered by an outright ban on vending machines. However, whether they represent sufficiently substantial government interests will depend in part on the significance of the problems actually posed by the vending machines in the particular community. "The cure of slight inconveniences or annoyances will not justify the regulation." (*Remer* v. *City of El Cajon* (1975) 52 Cal.App.3d 441, 443.) The city must show that the banned machines "pose real and certain hazards to the well-being of its citizenry." (*Id.*, at p. 444.)

The more critical question, though, is whether a total proscription against all vending machines on public property would be too broad in its coverage to meet the constitutional standard. Even in more narrowly drawn situations where the placement of vending machines on public sidewalks was all that was proscribed, the courts have consistently found that the implementing ordinance was too broad in scope. (See *Remer* v. *City of El Cajon, supra*, 52 Cal.App.3d at 444; *Chicago Newspaper Publishers* v. *City of Wheaton, supra*, 697 F.Supp. at 1469-1470; *Philadelphia News., Inc.* v. *Borough C., etc., Swarthmore* (E.D. Pa. 1974) 381 F.Supp. 228, 244; *Passaic Daily News* v. *Clifton* (1985) 200 N.J.Super. 468 [491 A.2d 808, 811].) In the *Philadelphia* case, for example, the court examined each of the evils thought to be attributable to newsracks on public sidewalks and determined that none of them justified a broad-based proscription:

". . . [O]ur decision does not preclude the Borough from `making reasonable regulations relating to the use of vending devices on sidewalks in the exercise of its police power.' In particular, if the feared evil is obstruction of the sidewalks that will interfere with the public's rights to unhampered passage thereon, narrow regulations as to the size and location of newspaper boxes could be formulated which would certainly survive constitutional scrutiny. [Citation.] If the feared evil is traffic congestion or illegal parking or stopping by motorists in order to purchase newspapers, narrow regulations with respect to the location of newspaper boxes in relation to the character of the roadway could also be formulated.

"If destruction or damage to municipal property because of chaining newspaper boxes to traffic standards or other fixtures is feared, suitable prohibitions could be enacted which would have only an incidental restrictive effect upon distribution by means of newspaper boxes. Finally, aesthetic considerations could justify the promulgation of reasonable regulations as to the size and appearance of the boxes, and the type and format of permissible identification or advertising.

"Regulations of such character fall well within the permissible bounds of the police power of a municipality. The fatal flaw in the ordinance and resolution as applied to plaintiff is the unreasonably restrictive and hence impermissible means to achieve permissible ends. As the Supreme Court noted in *NAACP* v. *Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964), `a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" (381 F.Supp at 244; fns. omitted.)

The same reasoning was succinctly stated by the court in *Remer* v. *City of El Cajon, supra*, 42 Cal.App.3d 441:

> ". . . We concede the conjectural evils perceived by the city may warrant action by its council, but we conclude the city's objectives must be achieved in a less broadly restrictive fashion. The city might consider controlling the number, size, construction, placement and appearance of the vending devices in order to achieve its goals without unduly restricting the free dispersal of information. As it stands, the blanket prohibition, without more, makes the ordinance overbroad and unconstitutional on its face [citation]." (*Id.*, at p. 444.)

Here, the proposed ordinance goes well beyond what is necessary to attack many of the "conjectural evils" of vending machines. The same measures suggested in the *Philadelphia* and *Remer* cases could be effectively employed instead of an outright ban on all vending machines on public property. For example, in *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 303-306, the court upheld a city ordinance which prohibited placement of sidewalk newsracks "within three feet of any area improved with lawn, flowers, shrubs or trees" or in a location that "unreasonably interferes with or impedes the flow of pedestrian or vehicle traffic" and required that such newsracks "be maintained in a clean, neat and attractive condition and in good repair at all times." In contrast, the proposed ordinance in question would make no attempt to provide a tailored approach in dealing with any characteristics of vending machines perceived to be undesirable.

Since it would not be narrowly drawn, the proposed ordinance would be constitutionally invalid. In reaching this conclusion, we are aware that the proposal would not be specifically directed at the distribution of newspapers. Such was also the case in the *Philadelphia* case, where the court noted:

> "The fact that the ordinance is not specifically directed at curtailment of newspaper distribution is immaterial. The crucial fact from the standpoint of the First and Fourteenth Amendments is that, as applied, the ordinance has the *effect* of impermissibly restricting distribution of newspapers." (381 F.Supp. at 243, fn. 10, citing *Flower* v. *United States* (1972) 407 U.S. 197.)

Of course, if the proposed ordinance banned only newsracks, it would similarly fail the constitutional standard. After examining a number of prior decisions, the Supreme Court in *Kash Enterprises* v. *City of Los Angeles, supra,* 19 Cal.3d 294, concluded:

> "Applying the general constitutional principles underlying the above line of authority, numerous courts -- both in California and out-of-state --have in recent years uniformly held that First Amendment protections are applicable to the public distribution of newspapers and periodicals through newsracks and that, as a consequence, municipalities lack constitutional authority to foreclose *all* use of such newsracks on their streets and sidewalks. [Citations.]" (*Id.*, at p. 302.)

As previously indicated, a city has the authority to address its legitimate concerns in areas protected by the First Amendment. "The State may . . . enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." (*Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45.)

Even a content-based regulation may be upheld in appropriate circumstances. In *Sebago, Inc.* v. *City of Alameda* (1989) 211 Cal.App.3d 1372, the court struck down a city's ban on

the sale of adult materials in vending machines located in various areas of the city; however, the court noted:

> "This conclusion does not leave government helpless to protect minors from unsupervised access to harmful pornography through newsracks; it just requires careful drafting by legislators." (*Id.*, at p. 1387.)

The language of Penal Code section 313.1, subdivision (c), was given by the court as an example of "specific and narrow drafting." (*Ibid.*)

Similarly, in *Sable Communications of California, Inc.* v. *Federal Communications Commission, et al.* (1989) 492 U.S. 115, the United States Supreme Court upheld Congress' ban on "obscene" telephone calls but struck down the federal ban on "indecent" telephone calls. With respect to the latter, the court observed:

> "Sexual expression which is indecent but not obscene is protected by the First Amendment . . . . The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards. [Citations.] The Government may serve this legitimate interest, but to withstand constitutional scrutiny, `it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. [Citation.]' [Citation.] It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends.

> "In *Butler* v. *Michigan*, 352 U.S. 380 (1957), a unanimous Court reversed a conviction under a statute which made it an offense to make available to the general public materials found to have a potentially harmful influence on minors. The Court found the law to be insufficiently tailored since it denied adults their free speech rights by allowing them to read only what was acceptable for children. As Justice Frankfurter said in that case, `[s]urely this is to burn the house to roast the pig.' *Id.*, at 383. In our judgment, this case, like *Butler*, presents us with `legislation not reasonably restricted to the evil with which it is said to deal.' *Ibid.*" (*Id.*, at p. 126-127.)

In answer to the question presented, therefore, we conclude that a city ordinance may not prohibit vending machines on public property located within the city to the extent that such prohibition includes newsracks.

* * * * *