The MIAMI HERALD PUBLISHING CO., et al., Plaintiffs-Appellees, Cross-Appellants,

v.

CITY OF HALLANDALE, et al., Defendants-Appellants, Cross-Appellees.

No. 82–5834.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

Legal Dept., City of Hallandale, Richard Kane, James Schoenbrod, Hallandale, Fla., for City of Hallandale.

Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Sanford L. Bohrer, Miami, Fla., for plaintiffs-appellees, cross-appellants.

Before ANDERSON and CLARK, Circuit Judges, and DUMBAULD *, District Judge.

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

CLARK, Circuit Judge:

The defendant City of Hallandale appeals to this court from an order of summary judgment entered by the district court in the Southern District of Florida, in favor of the plaintiff Miami Herald.

The dispute between the parties revolves around Chapter 16 of the Hallandale city code, as amended by ordinances 78-3, 79-17 and 79-19, which imposes an occupational license tax upon certain enumerated businesses. The Chapter 16 license tax specifically applies to the operation of vending machines, which necessarily includes newspaper vending machines, or newsracks. The ordinance provides in relevant part:

**Sec. 16-1. Required prior to conduct of business, occupation or profession.**

It shall be unlawful for any person, firm or corporation to engage in, conduct or manage the businesses, occupations or professions hereinafter mentioned in the city, unless a license shall have first been procured from the city clerk, which license shall be issued to each person, firm or corporation on receipt of the amount of tax hereinafter provided for, and shall be signed by the city clerk....

**Sec. 16-4. Issuance; records to be kept.**

All licenses shall be made out and issued by the city clerk on payment of the required license tax....

**Sec. 16-4.1. Conduct of business to comply with all ordinances and regulations.**

No license shall be issued or renewed to conduct any business which does not comply with all applicable provisions of the city Code and all regulations thereof including the Building Code, Fire Code and sanitary regulations.

Upon determining that probable cause exists to find that a business fails to comply with such ordinances or regulations, the city clerk shall give notice to the applicant of such noncompliance and refer the matter to the city commission, which shall conduct a hearing upon the issuance of such license. After hearing all evidence presented, if the city commission shall find that such business does not comply with applicable ordinances or regulations, it shall deny issuance of the license until such time as the applicant demonstrates compliance therewith....

**Sec. 16-10. Schedule of license taxes.**

A license tax shall be collected from every person, firm or corporation engaged in, conducting or managing any of the businesses, occupations or professions hereinafter specifically enumerated, which tax is hereby fixed at the respective amounts set opposite each business, occupation or profession hereunder....

**Ordinance No. 79-17.** *VENDING MACHINES, distributing merchandise and services:*

| | |
|---|---|
| Operator | $75.00 |
| One cent vending, each machine | 1.00 |
| Five cent vending, each machine | 5.00 |
| Ten cent vending, each machine | 7.50 |
| Over ten cents | 10.00 |

The City of Hallandale notified the newspaper of the city's intention to apply the ordinance to Miami Herald newsracks, whereupon the newspaper brought an action in the district court under 42 U.S.C. § 1983 to enjoin enforcement of the ordinance on first amendment grounds. The district court held in favor of the Miami Herald on a motion for summary judgment, for the following reasons: 1) licensing newspaper distribution is an all but per se violation of the first amendment; 2) the licensing system imposed an unlawful prior restraint and revenue tax on the exercise of a first amendment right; 3) the time, place, and manner restrictions imposed upon newspaper distribution were not narrowly drawn; and 4) the ordinance failed to comply with first amendment procedural due process requirements.

■ Hallandale's primary claim on appeal is that the Tax Injunction Act operates to deny the district court jurisdiction to rule on the constitutionality of the city's occupational licensing tax. 28 U.S.C. § 1341. That Act provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State.

*Id.* The city's position is that its ordinance constitutes a "tax under state law," which the district court is barred from enjoining; the newspaper, on the other hand, argues that the ordinance does not impose a tax but rather creates a regulatory licensing system, and consequently that the statute does not apply.[1]

The Tax Injunction Act was enacted in 1937. It is generally agreed that the Act "was part of a broad congressional response to the increased exposure of state officials to suits for injunctive relief after *Ex Parte Young* (209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908))." Note, "The Tax Injunction Act and Suits for Monetary Relief," 46 U.Chi.L.Rev. 736, 739 (1979); *see also Hargrave v. McKinney*, 413 F.2d 320, 325 (5th Cir.1969); 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4236 at 407–08 (1983). The Act, however, went beyond merely responding to *Young;* it embodied and furthered a general federal policy of noninterference with state taxing procedures. 46 U.Chi.L.Rev. at 741–42; *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir. 1980); *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir.1979). In light of the Act's overarching purpose to impede federal court interference with state tax systems, "Section 1341 has been construed to be much broader than its words initially suggest." *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir. 1980). "Tax under state law" has been interpreted to remove from federal jurisdiction, review of state laws that are intended to raise revenue for general municipal purposes, provided that the plaintiff has an adequate remedy in state court. *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128, 132 (7th Cir.1981); *Robinson Protec-*

*tive, etc. v. City of Philadelphia*, 581 F.2d 371, 376 (3d Cir.1978). It has been held, however, that to the extent the statute challenged is regulatory rather than revenue raising in purpose, the measure does not constitute a tax, and the district court retains jurisdiction. *Mobil Oil Corp. v. Tully*, 639 F.2d 912, 917–18 (2d Cir.1981).

The question thus becomes whether the purpose of the Hallandale ordinance at issue here is to raise revenue for the city or to regulate licensees. In support of its position that the measure is revenue raising, the City of Hallandale directs our attention to Ch. 205, Fla.Stat., which the city insists is the state legislation enabling Hallandale to enact the ordinance at issue here:

> 205.042 Levy; municipalities—... The governing body of an incorporated municipality may levy, by appropriate resolution or ordinance, an occupational license tax for the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction.

> 205.022 Definitions—... (1) "Local occupational license" means the method by which a local governing authority grants the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction. It shall not mean any fees or licenses paid to any board, commission, or officer for permits, registration, examination or inspection. Unless otherwise provided by law, these are deemed to be regulatory and in addition to, and not in lieu of, any local occupational license imposed under the provision of this chapter.

To the extent that Chapter 16 of the Hallandale city code tracks Chapter 205, and does no more than impose an occupational license tax on vending machines, it would appear that the measure is revenue raising, not regulatory:

> Chapter 205, F.S., preempts the area of local occupational license taxes, specif-

---

**1.** The plaintiff does not question the availability of a plain, speedy and efficient remedy in the Florida courts.

ically excluding local regulatory fees ... The main judicial delineation between a "regulatory fee" and a "license tax" appears to be the regulatory fee requirement that some standards for regulation and control of the registrant, subsequent to payment of the fee, be provided. If the applicant is merely required to pay a fee and payment acquires the right to carry on an occupation, without any further conditions, the pecuniary extraction is generally considered a license tax. *Tamiami Trail Tours, Inc. v. City of Orlando*, 120 So.2d 170 (Fla.1960). The judiciary has also required the regulatory fee to be reasonably commensurate with the actual expense of issuing the regulatory license and the cost of regulation.

Op.Att'y Gen. 074–21, January 17, 1974.

■ With one exception, the contested provisions concern themselves exclusively with establishing a system whereby the owners of vending machines are to pay a set fee as a precondition to engaging in business within the city limits, and to that extent merely impose a revenue raising occupational license tax—a tax under state law.[2] The exception is § 16–4.1. That section has nothing to do with the payment of fees or the raising of revenues, but rather requires as a prerequisite to obtaining a license to do business that applicants "comply with all applicable provisions of the city code and all regulations thereof including the Building Code, Fire Code and sanitary regulations." This latter portion of the ordinance is regulatory in nature, and as such does not fall within the definition of an occupational license tax authorized by Chapter 205.[3]

■ Hallandale's occupational licensing tax system is thus a hybrid: the license fee provisions are, as the newspaper and city have stipulated, designed to raise revenue for the city, and therefore qualify as a "tax under state law," while the provision requiring applicants to comply with other unspecified ordinances is wholly regulatory in nature. The newspaper tells us that when taken together, these provisions constitute a regulatory measure, while the city tells us that taken together the provisions constitute a tax. What neither party tells us is why the provisions must be taken together. In other words, in the context of this case, we see no reason why the district court could not properly address the merits of challenges to the regulatory components of the ordinance, and yet be without jurisdiction to resolve the challenges to those provisions that have a tax purpose. *Mobil Oil Corp. v. Tully*, 639 F.2d 912 (2d Cir. 1981) (§ 1341 does not bar the district court from resolving a dispute concerned exclusively with the component part of a state tax measure that has no tax purpose).

We recognize that severing a plaintiff's claims, dismissing those that attack the aspects of a state law with a tax purpose while addressing those that attack aspects of the law without a tax purpose, will frequently not be possible. In some cases, a single provision will be both revenue raising and regulatory in purpose; in other cases, a regulatory provision cannot be singled out and set aside without doing violence to the revenue raising provisions of the measure. In these situations, the policy and purpose of the Tax Injunction Act dictate that no attempt be made to sever

---

**2.** The parties stipulated that the license fee imposed pursuant to the ordinance "is a revenue tax, to be deposited in the city's general fund and to be used 'for all legal municipal purposes'." (R. at 229). We must therefore conclude that the purpose of the license fee is to raise revenue for the city rather than merely to recover the cost of regulating the licensees. In light of this stipulation, evidence pointed to by the newspaper suggesting that the revenue raised might not exceed the cost of administering the tax, must be regarded as relevant only to

the efficacy of the tax, rather than to its purpose.

**3.** This does not in any way suggest that the portion of the ordinance requiring applicants to comply with applicable provisions of the city code is not authorized as a general exercise of municipal police powers or by other enabling legislation, such as F.S. § 166.221, governing regulatory fees. The question of whether enabling authority exists for the ordinance is not before this court.

the claims or provisions. *California v. Grace Brethren Church*, 457 U.S. 393, 417 n. 38, 102 S.Ct. 2498, 2513 n. 38, 73 L.Ed.2d 93, 112 n. 38 (1983).

■ Here, however, the regulatory provision is wholly independent of the revenue raising license fee provisions. The ordinance imposes two preconditions upon the issuance of a license: the applicant must pay a fee, and comply with applicable municipal laws. The district court can rule on the propriety of imposing the latter precondition without affecting a city's capacity to raise revenue by means of the former. This view is bolstered by language in amendment 79–19 to Chapter 16 of the Hallandale city code, which provides:

> In the event that any section or provision of this ordinance or any portion thereof, any paragraph, sentence or word be declared by a court of competent jurisdiction to be invalid, such decision shall not affect the validity of the remainder hereof as a whole or part thereof other than the part declared to be invalid.

We must therefore determine which of the claims at issue here concern the license fee provisions and are consequently barred by the Tax Injunction Act, and which relate exclusively to § 16–4.1, the regulatory provision, which the district court has authority to address.

The district court reached four conclusions in holding that Chapter 16 of the Hallandale city code violated the Miami Herald's first amendment freedoms. The first two conclusions were directed, at least in part, at those provisions of the ordinance with a tax purpose. The first conclusion was that licensing newspaper distribution is a per se first amendment violation. In so holding, the court invalidated that portion of the ordinance conditioning permission to distribute newspapers via newsracks upon the payment of a revenue raising license fee. The second conclusion— that the licensing system imposed an unconstitutional revenue tax on the exercise of a first amendment right—likewise condemned that portion of the ordinance designed to raise revenue by means of a license tax.

Conclusions three and four, on the other hand, pertain exclusively to § 16–4.1, the regulatory segment of the ordinance. The essence of the court's third conclusion was that making compliance with "all applicable provisions of the city code" a precondition to obtaining an occupational license, vested uncontrolled discretion in the hands of city officials to deny licenses, and thereby imposed time, place, and manner restrictions on newspaper distribution that were not narrowly drawn. The fourth and final conclusion was that the ordinance failed to comply with first amendment procedural due process requirements, because § 16–4.1 failed to specify how long the city commission could delay before reaching a decision as to whether a license applicant had violated an applicable provision of the city code, and did not specifically provide for judicial review of city commission decisions denying licenses. In light of the foregoing analysis, we conclude that the district court was barred by the Tax Injunction Act from addressing the claims at issue in its first two conclusions, but not in its third and fourth.

■ The plaintiffs' suggestion that the Tax Injunction Act does not relieve federal courts of jurisdiction over any of the claims raised, because important constitutional rights are at issue, is simply incorrect. The Tax Injunction Act does not distinguish between statutory and constitutional claims; the district courts are without jurisdiction to review either, if the dispute concerns a tax under state law and there is an adequate state remedy. *California v. Grace Brethren Church*, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1983). *See also* Brilmayer, Underhill, "Congressional Obligation to Provide a Forum for Constitutional Claims: Discriminatory Jurisdictional Rules and the Conflict of Laws," 69 Va.L. Rev. 819, 842 n. 112 (1983); Monaghan, "Marbury and the Administrative State," 83 Col.L.Rev. 1, 11 n. 64 (1983). Nor is the jurisdictional bar to challenging state tax laws in federal courts avoided when suit is

brought under 42 U.S.C. § 1983 (*Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Bland v. McHann*, 463 F.2d 21 (5th Cir.1972)); this remains the case even though the § 1983 action may involve significant first amendment issues, for as the Supreme Court recently observed in *California v. Grace Brethren Church*, 457 U.S. at 415, 102 S.Ct. at 2512, 73 L.Ed.2d at 111 (1983), "Carving out a special exception (to the Tax Injunction Act) for taxpayers raising First Amendment claims would undermine significantly Congress' primary purpose 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.'" We must therefore dismiss the claims addressed in the district court's former two conclusions, and turn to a review of the merits of the latter two conclusions, which the plaintiff would have us affirm.

### The Discretion of City Officials Discriminatorily to Deny Licenses under Section 16–4.1

 Municipalities may enact laws in furtherance of the public health, safety and welfare, to the extent authorized by the states. *Breard v. City of Alexandria, Louisiana*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). Such municipal enactments are, as a general rule, presumptively constitutional. *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *see also* C. Antieau, *Modern Constitutional Law* § 3:2 at 206–09 (1969). The first amendment, however, restricts a municipality's capacity to enact laws affecting freedom of expression:

> The right to use a public place for expressive activity may be restricted only for weighty reasons. Clearly, government has no power to restrict such activity because of its message. Our cases make equally clear, however, that reasonable "time, place and manner" regulations may be necessary to further significant governmental interests, and are permitted.

*Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222, 231 (1972). Time, place and manner restrictions indirectly affecting expressive conduct are permissible, provided that they "are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. 171, ____, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736, 744 (1983); *Perry Education Assn v. Perry Local Educators Assn*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 805 (1983). In order to qualify as narrowly tailored, a content neutral ordinance must avoid vesting city officials with discretion to grant or deny licenses, for

> It is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162, 167 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302, 311 (1958).

 There can be no doubt that the right to distribute newspapers by means of newsracks is protected by the first amendment to the United States Constitution. *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Hull v. Petrillo*, 439 F.2d 1184 (2d Cir.1981); *Gannett Satellite Information Network, Inc. v. Metropolitan Transportation Authority*, 579 F.Supp. 90 (S.D.N.Y.1984); *Southern New Jersey Newspapers v. State of New Jersey*, 542 F.Supp. 173, 182–83 (D.N.J.1982); *Philadelphia News, Inc. v. Borough Council*, 381 F.Supp. 228, 241 (E.D.Pa.1974). Section 16–4.1 of the Hallandale City Code creates a content neutral restriction on that right: issuance and renewal of the Miami Herald's license to vend newspapers via

newsracks is conditioned upon the Herald's compliance with "applicable ordinances." The question that remains is whether such a restriction is narrowly tailored to serve a significant government interest.

The City of Hallandale most certainly has a substantial interest in seeing that structures situated in public places, such as newsracks, comply with applicable ordinances properly enacted to preserve public health, safety and welfare. The Miami Herald does not dispute this; nor does it allege that any potentially applicable ordinance fails to serve a proper public purpose. Rather, it argues that the provision at issue here is not narrowly drawn, in that it vests city officials with uncontrolled discretion to determine which provisions of the city code are applicable, whether a given applicant has complied with such provisions, and thus whether the applicant has satisfied the precondition to obtaining a license that it comply with applicable provisions of the city code; the provision thereby extends to such officials the opportunity discriminatorily to deny licenses. The district court agreed, concluding that the "unspecified conditions precedent" to issuance of an occupational license went beyond narrowly drawn time, place, and manner restrictions, thus rendering the statute invalid.

Certainly, the discretion granted city officials to approve or deny permits in this case is nowhere near as great as in *Staub v. City of Baxley,* the case relied on by the Miami Herald, where the mayor and city council were authorized to refuse to grant a permit "if they do not approve of the applicant," 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302, 311 (1958). Rather, the discretion of the Hallandale city clerk and city commission to find violations of "applicable" ordinances and thereby discriminatorily to deny occupational licenses to applicants is circumscribed by the terms of the ordinances themselves. Nevertheless, the decision of which ordinances apply, and whether such ordinances have been violated in any given case are decisions that § 16–4.1 leaves to the judgment of the city clerk and city commission; city officials thus retain considerable discretion to find ordinance violations, and consequently to deny licenses.[4]

---

**4.** The city assures us that it has no discretion to find ordinance violations and deny permits to newsrack operators for the very simple reason that there are no ordinances applicable to newsracks and the Miami Herald has produced no evidence to the contrary. Were § 16–4 either to provide that no ordinances pertained to newsracks, or to specify which ordinances did apply and to furnish newsrack operators the requisite procedural protections discussed *infra,* we might agree that official discretion would be satisfactorily curtailed. But as it stands, city officials have the discretion to determine whether and which ordinances apply to newsracks; and while the city informs us today that no ordinances apply to newsracks, nothing in Chapter 16 forecloses the city commission from reevaluating that position at any time, for any reason. The Herald has challenged the constitutionality of § 16–4.1 on its face, and has successfully demonstrated that the ordinance vests city officials with the discretion to decide which ordinances apply to newsracks and whether such ordinances have been violated in any given case—and that is all it has to do. In a facial challenge such as this, the facts of the challenging party's case are irrelevant. *Beckerman v. City of Tupelo, Mississippi,* 664 F.2d 502, 506–7 (5th Cir.1981). It is unnecessary and would be futile for the newspaper to speculate as to precisely which provisions of the city code city officials are likeliest to deem applicable, for it is the very fact that city officials are unguided in their discretion to decide which provisions apply and whether they have been violated that renders § 16–4.1 infirm:

> [I]t [is] immaterial whether the official who denied a permit acted reasonably, whether a permit could legally have been denied under a narrower statute, or indeed whether the party challenging the measure even applied for a permit. (citation omitted). In other words, in the first amendment area, the Court will invalidate an excessively broad grant of discretion on its face. But if the Court were concerned merely about officials abusing their wide discretion, it need not have chosen this facial approach; it could have struck down the abuses when they arose. (citation omitted). By facially invalidating excessively broad grants of discretion, then, the Court has revealed that the problem is not potential abuses but the very existence of broad, censorial power.

*ISKON v. Eaves,* 601 F.2d 809, 823 (5th Cir. 1979). Thus in the unique context of first amendment challenges upon the facial validity of licensing statutes, it is the very existence of official discretion that gives rise to a threat of

Put another way, § 16–4.1 calls upon the city commission to adjudicate the rights of license applicants to receive business permits, to apply the specific facts surrounding a given applicant's case to the general body of law contained in the city code, to determine if the applicant has violated a provision therein, and if so to deny him the right to do business. This is an adjudicative function, and as such necessarily involves the exercise of considerable discretion. Accompanying such discretion is the opportunity to discriminate against a licensee on the basis of what the licensee intends to say, which in the context of licensing newspaper distribution raises the spectre of prior restraint. *International Society for Krishna Consciousness v. Rochford,* 585 F.2d 263 (7th Cir.1978) (airport regulation authorizing airport official to issue permits to distribute literature only to those applicants "authorized by law to distribute literature," vested airport officials with untoward discretion discriminatorily to deny permits); *Swearson v. Meyers,* 455 F.Supp. 88, 91 (D.Kan.1978), *citing Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976) (a permit system must "leave no factors to be assessed, judgments to be made, or discretion to be exercised by the appropriate licensing official. In other words, the decision to grant or deny the license application must be virtually a ministerial one").

In determining whether a state or municipal law that indirectly affects first amendment freedoms is narrowly tailored enough to pass constitutional muster, it is appropriate to consider whether alternative means are available to the state that would both serve the state's interest and exert a less severe impact on first amendment rights. L. Tribe, *American Constitutional Law,* 682–87 (1978). In this case, the municipality's interest in furthering the public health, safety and welfare by enforcing its ordinances can be and in fact is preserved by more narrowly tailored means. Section 2–5.2 of the city code provides for a code

compliance inspector to investigate possible code violations, to notify suspected violators and urge their compliance, and to bring an action in county court to compel compliance if necessary. Alternatively, § 2–89 *et seq.* permits a code compliance inspector to bring an action before the Code Enforcement Board. The first option leaves no discretion in the hands of city officials to find city code violations or to penalize violators. The § 2–89 alternative vests an administrative body with the authority to enforce the code, and by the terms of the ordinance lays out an elaborate procedure governing the time and manner in which the Code Enforcement Board proceedings are to be conducted, and of particular importance, affords aggrieved parties prompt judicial review of Board determinations (*see* discussion of procedural requirements, *infra*).

### Procedural Due Process Requirements

A content neutral licensing regulation that exerts an indirect impact upon the freedom of speech and which extends to city officials the discretion to deny permits constitutes a prior restraint that "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649, 654 (1965); *Fernandes v. Limmer,* 663 F.2d 619, 628 (5th Cir. Unit A 1981); *Rubin v. City of Berwyn,* 553 F.Supp. 476, 480 (N.D.Ill.1982). Two such procedural safeguards are that the licensor be required to act upon a license application within a specified, brief period and that license applicants be guaranteed prompt judicial review of licensing decisions. *Freedman,* 380 U.S. at 58–59, 85 S.Ct. at 739, 13 L.Ed.2d at 654–655; *Fernandes,* 663 F.2d at 628. Section 16–4.1 fails to provide either of these safeguards.

No time limits are prescribed within which the city commission is to decide

---

injury sufficient to warrant an injunction. *See generally id.; Fernandes v. Limmer,* 663 F.2d 619, 628 (5th Cir. Unit A 1981); *Beckerman v.*

*City of Tupelo, Mississippi,* 664 F.2d 502 (5th Cir. Unit A 1981).

whether a given applicant must be denied a license for failure to comply with applicable provisions of the city code; during the indeterminate period that such a matter is pending, a newsrack operator is without a license to vend newspapers, and by the terms of Chapter 16, without a license, he may not operate the newsracks. Furthermore, the statute furnishes no means for judicial review, prompt or otherwise, of city commission decisions.

Because § 16–4.1 vests city officials with untoward discretion to deny licenses, and furnishes inadequate safeguards to ensure against abuse of that discretion, we hold that the section is unconstitutional on its face.

DISMISSED IN PART and AFFIRMED IN PART.