The NATURIST SOCIETY, INC., and T.A. Wyner, Plaintiffs,

v.

John FILLYAW, individually and in his official capacity as Park Manager, John D. MacArthur Beach State Park, Defendant.

No. 89–8130–CIV.

United States District Court, S.D. Florida.

July 13, 1994.

who wishes to avoid censure to simply remain mute?

[redacted]

[redacted]

[redacted]

James K. Green, West Palm Beach, FL, W. Trent Steele, Palm Beach Gardens, FL, for plaintiffs.

Martha Corry Olive, Bryant, Miller & Olive, P.A., Tallahassee, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon the plaintiffs' Second Motion for Summary Judgment and the defendant's Second Motion for Summary Judgment. These motions have been fully briefed and the Court heard oral arguments of counsel on November 18, 1993.

### I. Background

The Naturist Society, Inc., is a Wisconsin corporation that advocates a "clothing optional" lifestyle and educates the public through writings, lectures, and public demonstrations. Ms. T.A. Wyner is a Florida resident who has belonged to the Society as a member since 1987. The Society meets as both a local and national organization several times a year.

On June 29, 1988, the plaintiffs contacted John Fillyaw, the park manager for the John D. MacArthur Beach State Park and advised him that the Society wished to demonstrate at the park. Wyner requested permission for Society members to approach park visitors and distribute literature, to display a two-foot by four-foot sign with the phrase "Sunnier Palms," to exhibit nude sculptures, and to appear nude or with minimal clothing. On July 6, 1988, defendant Fillyaw issued a permit allowing the Society to distribute printed literature within the park. The permit allowed the plaintiffs to demonstrate at the park on Saturday, July 9, 1988, during the peak visiting hours of 10:00 a.m. to 1:00 p.m. The plaintiffs were allowed to protest from a fixed location, approximately one hundred yards north of the park's entrance, and to utilize a table for their materials. However, defendant Fillyaw directed the plaintiffs not to approach park visitors directly on the beach and not to display the requested banner and nude sculptures.

On July 14, 1988, plaintiff Wyner wrote a letter to defendant Fillyaw to confirm the various conditions which had been placed on the demonstration. The defendant promptly responded by letter dated July 22, 1988, in which he cited to the various portions of Florida Administrative Code, Chapter 16D-2, which provided him with the legal authority to curtail the plaintiffs from directly approaching visitors on the beach, from appearing in inappropriate beach attire, and from displaying banners and nude sculptures on the beach.

On Saturday, July 9, 1988, in accordance with the permit, the Naturists appeared at the park and demonstrated. Approximately thirty persons attended. At the demonstration, Ms. Wyner was fully attired in a long dress and there is no allegation that the group appeared nude. The group did not bring signs, banners, or artwork because of the limitations imposed by Fillyaw. There is no evidence of how many visitors stopped at the demonstration.

In March, 1989, the plaintiffs brought this action against defendant Fillyaw, in his official and individual capacities, challenging the constitutionality of the provisions of the Florida Administrative Code which govern attire, speech, and expressive conduct in Florida state parks. Their amended complaint, which was filed on March 30, 1989, consisted of four counts. Count I of the amended complaint challenged Florida Administrative Code rule 16D-2.004(1)(e), the regulation

governing beach attire. Count II challenged Florida Administrative Code Rule 16D–2.007(1)(a)–(h), a regulation which prohibited distribution of "printed matter" without a permit. Count III challenged Florida Administrative Code Rule 16D–2.007(2) and (5), which governed general conduct in the park and banned the circulation of petitions. Finally, Count IV of the amended complaint challenged Florida Administrative Code Rule 16D–2.008(1) and (2)(a)–(c), which governed advertising, sales and displays in Florida state parks.

On May 4, 1990, this Court entered a final order granting defendant Fillyaw's motion for summary judgment and denying the plaintiffs' motion for summary judgment. This Court held that the regulation governing beach attire, Rule 16D–2.004(1)(e), was neither overbroad on its face nor vague as interpreted and applied by defendant Fillyaw. Finding the park to be a "non-public forum," this Court further held that the other challenged regulations constituted legitimate, content-neutral, time, place and manner restrictions on speech and expressive conduct. That final order was appealed to the United States Court of Appeals for the Eleventh Circuit.[1]

After this Court entered its final order, the state of Florida adopted amendments to the regulations challenged by the plaintiffs. In relevant part, the amended regulations allow signs, displays, and exhibits in Florida parks after a permit has been obtained. Fla.Admin.Code Ann.R. 16D–2.007(1); 16D–2.008(2)(a), (b). Similarly, the amended regulations allow circulation of petitions, but only in accordance with a permitting procedure. Fla.Admin.Code Ann.R. 16D–2.007(5). The Society has never applied for a permit under the new regulations, nor has it attempted to demonstrate without a permit.

On June 27, 1991, the Eleventh Circuit upheld this Court's opinion. However, upon petition for rehearing, the Eleventh Circuit affirmed in part, reversed in part, and remanded this action for further proceedings consistent with its determination that MacArthur Beach State Park is a public forum for purposes of First Amendment analysis.

Following remand, the plaintiffs filed their second amended complaint, challenging various provisions of the former and amended regulations governing conduct in Florida state parks. Count I of the plaintiffs' second amended complaint alleges that former Rule 16D–2.007(1)(a)–(h) is unconstitutional on its face and as applied to the plaintiffs, and that defendant Fillyaw's conduct enforcing the rule violated clearly established law. Former Rule 16D–2.007(1)(a)–(h) provides:

(a) The sale or distribution of printed matter is permitted within the park areas, provided a permit to do so has been issued by the manager and provided further that the printed matter is not solely commercial advertising.

(b) Any application for such a permit shall set forth the name of the applicant; the name of the organization, if any; the date, time, duration, and location of the proposed sale or distribution; and the number of participants.

(c) The manager shall, without unreasonable delay, issue a permit on proper application unless: (1) a prior applicant for a permit for the same time and location has been or will be granted a permit and the activities authorized by that permit do not reasonably permit multiple occupancy of the particular area; (2) the sale or distribution will present a clear and present danger to the public health or safety; (3) the number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for; (4) the location applied for has not been designated as available for the sale or distribution of printed matter; (5) the activity would constitute a violation of an applicable law or regulation. If an applicant for a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial clearly set forth.

(d) The manager shall designate on a map, which shall be available for inspection in the Office of the Manager, the locations within the park area that are available for the sale or distribution of printed matter.

1. The Court's determination regarding Rule 16D–2.004(1)(e) was not challenged on appeal.

(e) The permit may contain such conditions as are reasonably consistent with protection and use of the park area.

(f) No permit shall be issued for a period in excess of 14 consecutive days, provided that permits may be extended for like periods, upon a new application.

(g) Persons engaged in the sale or distribution of printed matter under this section shall not obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes of affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation.

(h) Sale or distribution of printed matter without a permit, or in violation of the terms or conditions of a permit is prohibited.

According to the plaintiffs, former Rule 16D–2.007 is unconstitutional on its face and as applied because it vests too much discretion in park managers, fails to provide for prompt administrative and judicial review of permit denials, and prohibits plaintiffs from approaching people on the beach.

Count II of the plaintiffs' second amended complaint challenges the constitutionality of Amended Rule 16D–2.007. Amended Rule 16D–2.007 states:

(1) Exhibits, Displays, Signs and Distribution of Printed Matter.

(a) Exhibits, displays, signs and distribution of printed matter is permitted within park areas, provided a permit to do so has been issued by the manager, and provided further that the exhibit, display, sign or printed matter is not solely commercial advertising and that no obscene literature or material, as defined in section 847.011 Florida Statutes, is displayed or distributed.

(b) Any application for such a permit shall set forth the name of the applicant; the name of the organization, if any; the date, time, durations, and location of the proposed exhibit, display, sign and/or distribution of printed matter; and the number of participants.

(c) The park manager shall, without unreasonable delay, issue a permit to an applicant unless:

1. A permit application for the same time and location has been or will be granted and the activities authorized by that permit do not reasonably permit multiple occupancy of the particular area;

2. The exhibit, display, sign or distribution of printed matter will present a clear and present danger to the public health or safety;

3. The number of persons engaged in the exhibit, display, sign or distribution of printed matter exceeds the number that can reasonably be accommodated in the particular location applied for;

4. The location applied for has not been designated as available for exhibits, displays, signs or distribution of printed matter;

5. The activity would be commercial in nature or involve sales or solicitations of any kind;

6. The activity would include amplification equipment or otherwise unreasonably impair the atmosphere of peace and tranquility;

7. The activity would unreasonably interfere with any program activities or administrative functions of the Division;

8. The activity will cause damage to park resources; or

9. The activity will substantially impair the operation of public use facilities or services of concessionaires or contractors.

10. If an application for a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial clearly set forth.

(d) The park manager shall designate on a map, which shall be available for inspection in the Office of the Park Manager, the locations within the park area that are available for exhibits, displays, signs or distribution of printed matter. Locations may be designated as not available only if the sale or distribution of printed matter would: (1) cause inju-

ry or damage to park resources; or (2) unreasonably impair the atmosphere of peace and tranquility maintained in Division areas; or (3) unreasonably interfere with interpretive, living, history, visitor services, or other program activities or with the administrative functions of the Division; or (4) substantially impair the operation of public use facilities or services of Division concessionaires or contractors.

(e) The permit shall contain such conditions as are reasonably consistent with protection and use of the park area.

(f) No permit shall be issued for a period in excess of 14 consecutive days, provided that permits may be extended for like periods, upon receipt of a new application.

(g) Persons engaged in the distribution of printed matter under this section shall not obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, or misrepresent the purposes or affiliations of those engaged in the distribution.

(h) The distribution of printed matter without a permit, or in violation of the terms or conditions of a permit is prohibited.

(i) Any permit may be revoked under any of those conditions as listed in paragraph (c) of this section, which constitute grounds for denial of the permit, or for violation of the terms and conditions of the permit. Revocations shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when a immediate verbal revocation or suspension may be made, to be followed by written confirmation.

According to the plaintiffs, Amended Rule 16D–2.007(1)(a)–(i) is unconstitutional on its face because it also vests too much discretion in park managers, fails to provide for prompt administrative and judicial review of permit denials, and prohibits non-commercial solicitations and sound amplification equipment.

Former Rule 16D–2.008(1) and (2)(a)–(c) is the subject of Count III. Former Rule 16D–2.008 provides in pertinent part:

(1) No person shall expose or offer for sale any article or material, nor shall he place any stand, cart or vehicle for the transportation, sale or display of any such article or material within the park.

\*　　\*　　\*　　\*　　\*　　\*

(2)(a) No person shall use park roadways or enter any park for the purpose of announcing, displaying, advertising, or calling attention to any person, political party, religious institution or sect, or meeting or assembly thereof, or for the purpose of advertising any item or service for sale; nor shall displays of any form be used for such purposes; no person shall place on any public land or roadway adjacent to any park or any vehicle whatsoever displaying such advertising or used for sales.

(b) No person shall distribute, display or affix to any property any printed materials advertising any event within any park or roadway adjacent thereto.

(c) No person shall make any display or exhibit of any kind or carry on any performance or do anything which will cause numbers of persons to congregate to the interference or obstruction to pedestrian and vehicular traffic or to any other proper purpose of the park.

The plaintiffs claim that this rule is unconstitutional on its face and as applied to the plaintiffs, and that defendant Fillyaw violated clearly established law by invoking the rule as authority for prohibiting plaintiffs from setting up an art exhibit in conjunction with the distribution of literature.

Finally, the plaintiffs challenge the constitutionality of Amended Rule 16D–2.008. Amended Rule 16D–2.008 states:

(1) Merchandising. No person shall offer for sale any article or material, nor place any stand, cart, or vehicle for the transportation, sale or display of any article or material for sale within any state park unless authorized by the Division in accordance with this rule.

(a) After determining the need or desirability for a concession operation in a park, and after first offering the concession to the Division of Blind Services,

pursuant to section 413.051, Florida Statutes, the Division will either establish and operate concession utilizing its own staff, or seek to obtain a qualified concessionaire through advertising for proposals, or negotiating directly with qualified vendors when the request for proposal process has failed to produce a qualified applicant.

(b) The Division's standard concession agreement requires the concessionaire to assume the following responsibilities:

1. Provide an adequate and acceptable level of service and maintain and operate the concession in a clean, safe and businesslike manner;

2. Obtain and maintain all required permits and licenses;

3. Provide public liability insurance coverage in an amount determined by the Division to protect the business and the Division against claims for personal injury, death, and property damage;

4. Submit accounting reports and compensation as required;

5. Provide a performance bond, letter of credit from an approved Florida Bank, cash deposit, or other approved collateral to assure compliance with the concession agreement;

6. Comply with all other specific requirements, conditions and stipulations that may be included in the concession agreement;

7. Maintain stock of quantity and quality consistent with the need and image of the park.

(c) The Executive Director or his designee shall approve standard park concession agreements, as well as extensions and assignments, pursuant to delegated authority from the Head of the Department.

The plaintiffs argue that this rule is unconstitutional on its face and to the extent that it prevents them from selling posters, bumper-stickers, T-shirts, and art with expressive messages for the purpose of fundraising.[2]

Counts I and III seek an award of damages against defendant Fillyaw in his individual capacity. He has raised the affirmative defense of qualified immunity with respect to these claims.

## II. Discussion

 As the Eleventh Circuit has held, John D. MacArthur Beach State Park is considered a public forum for the purpose of First Amendment analysis. *Naturist Society, Inc. v. Fillyaw,* 958 F.2d 1515 (11th Cir.1992). Nevertheless, the Naturists are not free to exercise First Amendment rights in this forum as they see fit. *Naturist,* 958 F.2d 1515, 1523; *Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). The state may impose reasonable time, place, and manner restrictions on the exercise of free speech even in public forums. *Naturist,* 958 F.2d 1515, 1523; *See, e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Heffron,* 452 U.S. 640, 101 S.Ct. 2559. However, such restrictions are legitimate only if they "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Naturist,* 958 F.2d 1515, 1523 (quoting *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37 at 45, 103 S.Ct. 948, at 955, 74 L.Ed.2d 794 (1983)). This standard applies whether the restricted expression is "oral or written or symbolized by conduct." *Naturist,* 958 F.2d 1515, 1523 (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).

---

**2.** The Court is somewhat puzzled by this allegation, because the record is completely devoid of any evidence indicating that the plaintiffs have an interest in selling posters, bumper-stickers, T-shirts, and the like in MacArthur Beach State Park or anywhere else. Moreover, there has been no indication that this rule, which sets the standards for concession agreements, has been or would be invoked to prevent the sale of expressive materials in connection with First Amendment activity. Accordingly, the Court finds no basis upon which to address this allegation.

### A. Time, Place, and Manner Restrictions

■ Upon review of both former and amended Rule 16D–2.007, as well as former and amended Rule 16D–2.008, the Court finds that none of these regulations restricts speech on the basis of content. Both forms of Rule 16D–2.007(1)(a) provide for the distribution of printed matter, so long as it is not solely commercial advertising, and the distributor has first obtained a permit from the park manager. Amended Rule 16D–2.007(1)(a) permits demonstrators to use exhibits, displays, and signs as well. Subsection (1)(b) of former and amended Rule 16D–2.007 requires that a permit application contain the following information: name of the applicant; the name of the organization, if any; the date, time, duration, and location of the proposed sale or distribution; and the number of participants. Subsection (1)(c) of former and amended Rule 16D–2.007 provides that the park manager must issue a permit unless one or more of the specified, content-neutral exceptions apply.

Subsection (1)(d) of both former and amended Rule 16D–2.007 requires the park manager to designate on a map, which shall be available for inspection in the Office of the Manager, the locations within the park area that are available for the sale and distribution of printed manner (or exhibits and displays, pursuant to amended Rule 16D–2.007). Subsection (1)(d) of the amended rule also sets forth the criteria for designating an area as not available. According to this section, a permit must be denied if the location applied for is not a designated available area. Subsection (1)(e) of the former and amended rules provides that a permit may contain such conditions as are reasonably consistent with protection and use of the park area. Subsection (1)(f) sets forth the time limitations on the permit. Subsection (1)(g) prohibits demonstrators from obstructing or impeding pedestrians or vehicles, harassing park visitors with physical contact or persistent demands. Subsection (1)(h) prohibits the sale or distribution of printed matter without a permit. Finally, subsection (1)(i) of amended Rule 16D–2.007 provides the conditions for revocation of a permit. The plaintiffs are unable to identify, and the Court is unable to find, any content censorship inherent in these regulations.

The plaintiffs argue that the regulations cannot be viewed as content-neutral, because they grant park managers a high degree of discretion to deny permits on the basis of content. The Court disagrees. Although the former and amended versions of Rule 16D–2.007 grant park managers the discretion to issue or deny permits, these rules set forth the specific, content-neutral criteria to be considered when the decision to issue or deny a permit is made. The Court finds no basis whatsoever for the plaintiffs' argument that the rules authorize park managers to deny permits based upon the content of applicant's message. The mere fact that park managers are granted some discretion, to the extent that they must decide whether the rules' exceptions apply, has no bearing on the question of whether the rules themselves are content-neutral.

Similarly, the Court is unable to find any content censorship inherent in either former or amended Rule 16D–2.008. Former Rule 16D–2.008 prohibits the sale, advertisement, or display of any materials in the park. It also prohibits the use of park roadways or entry into the park for the purpose of advertising any products, services, events, political parties, religious institutions, or meetings; essentially, it prohibits advertisements of any kind. Finally, former Rule 16D–2.008 provides that no person shall make any display or exhibit of any kind or carry on any performance or do anything which will cause a number of persons to congregate to the interference or obstruction of vehicular or pedestrian traffic. Amended Rule 16D–2.008(1) prohibits the sale of any article or material within any state park unless authorized in accordance with the remainder of the rule, which outlines the procedure for establishing concession operations in state parks.

Although former Rule 16D–2.008 bans all advertisements, displays, sales, etc., the rule is completely neutral with respect to the item advertised, the nature of the display, or the type of product sold. Similarly, the restriction placed on sales by amended Rule 16D–2.008 lacks any reference to the type of

product sold. Facially, these rules are certainly content-neutral.

■ The plaintiffs assert that the challenged regulations, even if facially valid, were applied by defendant Fillyaw in a manner that discriminated against them based upon the content of their speech. However, there exists no evidence in the record to create a genuine issue as to this assertion. In support of their assertion, the plaintiffs point to two instances in which groups allegedly engaged in activities similar to those which the plaintiffs were prohibited from engaging in on the beach. According to the affidavit and deposition testimony of the plaintiffs' witness, David Lill, the first event occurred in 1985. At that time, an organization known as Florida Free Beaches entered MacArthur Beach State Park, approached beach goers, and distributed visors with messages urging people to vote in favor of beach bonds. According to the plaintiffs' own witness, however, the defendant never granted a permit to this organization. Furthermore, the plaintiffs have presented no evidence that the defendant was present during this demonstration, or that he knew this demonstration was going to occur. Thus, there is no evidence that the defendant consented to this demonstration.

Next, the plaintiffs emphasize that the defendant, in his own deposition, admits that he has issued permits to film-makers and photographers which allowed them to photograph the beach. However, the fact that defendant Fillyaw has issued such permits is completely irrelevant to this litigation. There is simply no showing that these photographers sought to engage, or did engage, in any activities which the plaintiffs were prevented from engaging in. Consequently, the Court finds that former and amended Rules 16D–2.007 and 16D–2.008 are content-neutral both facially and as applied to the plaintiffs.

The Court must now determine whether the challenged rules are "narrowly tailored to serve a significant government interest." In making this determination, the Court must consider those characteristics which distinguish MacArthur Beach State Park and Florida's other state-owned parks from the typi-

cal public park. *Naturist,* 958 F.2d 1515, 1523. MacArthur Beach State Park, like other state-owned parks, was purchased in order to preserve the undeveloped natural beauty of the Florida landscape for the enjoyment of citizens and tourists. Through the use of MacArthur Beach State Park, and other parks like it, it is the goal of the Florida Department of Natural Resources to provide an alternative to the noisy, commercialized parks and beaches which now predominate the state. Secluded and protected, MacArthur Beach State Park offers visitors a glimpse of exotic plants, animals and sea life in a tranquil environment which is uncharacteristic of the traditional public park.

The defendant argues that the rules challenged by the plaintiffs are narrowly tailored to serve the following interests of the state: (1) to protect the rights of individual beach goers to their privacy and freedom from confrontations with demonstrators; (2) to ensure park visitors a unique recreational experience based on the natural environment; and (3) to promote park aesthetics.

■ With regard to the first interest asserted, the plaintiffs accurately assert that visitors of MacArthur Beach State Park have no special right to privacy and freedom from confrontations with demonstrators. As the Eleventh Circuit has held, MacArthur Beach State Park, notwithstanding its unique characteristics, must be considered a traditional public forum for the purpose of First Amendment analysis. It would be completely inconsistent with First Amendment principles to hold that visitors to such a forum carry with them an inherent right to privacy and freedom from demonstrators.

■ However, the state may have a legitimate interest in providing a certain degree of privacy and freedom from demonstrators in particular areas of the park, to the extent that may be necessary to prevent interference with the intended use of those areas. *See Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Such a necessity arises in this case by virtue of the state's second asserted interest: providing park visitors with a unique recreational experience based on the natural environ-

ment. At the outset, the Court recognizes that this is a significant state interest. It is a well-known fact that tourists and residents alike are attracted to Florida in large part due to its unique natural resources. Consequently, the state of Florida has devoted substantial amounts of time and money to preserving these resources at state-owned parks like MacArthur Beach State Park, and offering these parks as places where individuals may experience the "real" Florida without the usual distractions of everyday life. The state obviously has a significant interest in continuing to offer, and remaining able to deliver, this unique recreational experience.

In those areas of the park where visitors may experience the park's unique environment on a most intimate level, such as on the beach or the nature trails, they are entitled to some privacy and freedom from solicitation. Without this privacy, a park visitor's ability to appreciate the sights and sounds of nature would be severely undermined. It is certainly within the state's prerogative, therefore, to provide park visitors with freedom from solicitation and demonstrations in those areas of the park where such activity would interfere with the area's primary use: as a place where visitors may relax and "get in touch with nature."

The third interest asserted by the state, preservation of the park's aesthetics, is substantially related to the state's interest in providing park visitors with a unique recreational experience based on the natural environment. The plaintiffs argue that the preservation of a park's aesthetics is not a "significant interest" for purposes of First Amendment analysis. In support of this argument, they rely upon *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 510, 101 S.Ct. 2882, 2894, 69 L.Ed.2d 800 (1981). However, their reliance upon *Metromedia* is misplaced.

The plaintiffs correctly state that the Supreme Court in *Metromedia* held unconstitutional an ordinance which imposed substantial prohibitions on the erection of outdoor advertising displays within the city, despite the government's asserted interest in aesthetics. However, the Supreme Court in *Metromedia* did not hold that a government's

interest in aesthetics may never be considered a "significant interest." In fact, a solid majority of the Court specifically recognized that the advancement of aesthetic interests, under certain circumstances, is a substantial government interest. *See Metromedia*, 453 U.S., at 506, 101 S.Ct., at 2892 (plurality opinion of White, J.) ("there [can] be [no] substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial government goals"); 453 U.S. at 560, 101 S.Ct. at 2919 (Burger, Chief J., dissenting) (The plurality acknowledges—as they must— that promoting traffic safety and preserving scenic beauty "are substantial governmental goals."); at 569, 101 S.Ct. at 2924 (Rehnquist, J., dissenting) ("the aesthetic justification alone is sufficient to sustain a total prohibition of billboards within a community"); and at 533, 101 S.Ct. at 2906 (Brennan, J., joined by Blackmun, J., concurring) ("I have little doubt that some jurisdictions will easily carry the burden of proving the substantiality of their interest in aesthetics").

Significantly, Justice Brennan, in his concurring opinion, doubted the genuineness of San Diego's asserted interest in aesthetics in its commercial and industrial areas, and stated:

> By showing a comprehensive commitment to making its physical environment in commercial and industrial areas more attractive, and by allowing only narrowly tailored exceptions, if any, San Diego could demonstrate that its interest in creating an aesthetically pleasing environment is genuine and substantial. This is a requirement where, as here, there is an infringement of important constitutional consequence.

> I have little doubt that some jurisdictions will easily carry the burden of proving the substantiality of their interest in aesthetics. For example, the parties acknowledge that a historical community such as Williamsburg, Va. should be able to prove that its interest in aesthetics and historical authenticity are sufficiently important that the First Amendment value attached to billboards must yield ... And I would be surprised if the Federal Government had much trouble making the argu-

ment that billboards could be entirely banned in Yellowstone National Park, where their very existence would so obviously be inconsistent with the surrounding landscape.

*Metromedia,* at 533–534, 101 S.Ct. at 2906 (Brennan, J., concurring). In the instant case, the state of Florida has clearly met the requirements delineated by Justice Brennan by demonstrating a comprehensive commitment to preserving the undeveloped natural beauty of the Florida landscape in MacArthur Beach State Park and other state parks. Florida's state parks are promoted to citizens and tourists as exceedingly rare places in which they may experience the "natural Florida". *See* Exhibit "D" to Defendant's Second Motion for Summary Judgment. Moreover, the Department of Natural Resources expends a considerable amount of time and money protecting the biological and wildlife resources of MacArthur Park. *See* Exhibits "D" through "H" to Defendant's Second Motion for Summary Judgment. Thus, MacArthur Beach State Park is exactly the type of environment recognized by Justice Brennan as one in which the government's interest in aesthetics is substantial enough to justify limits on First Amendment activity.

Having recognized that the state has asserted a legitimate and significant interest in preserving the park's aesthetics and providing park visitors with a unique recreational experience based on the natural environment, the Court must now determine whether the challenged regulations are narrowly tailored to meet these interests.

■ According to the plaintiffs, the state's total ban of sound amplification in the parks (amended Rule 16D–2.007(1)(c)(6)) cannot possibly pass constitutional muster. The Court disagrees. The Court recognizes that legislation which prohibits all sound amplification within a city, except at very limited times and in very limited places, has been appropriately invalidated. *See Reeves v. McConn,* 631 F.2d 377 (5th Cir.1980). Such sweeping prohibitions can rarely be viewed as narrowly tailored to meet the government's interest. However, a government may certainly prohibit sound amplification in places where it would be particularly disrup-

tive. "[T]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Reeves v. McConn,* at 384 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, at 116, 92 S.Ct. 2294, at 2303).

In the instant case, the state's prohibition of sound amplification is limited to state owned parks which are designed to provide a unique encounter with nature, in a relaxing and tranquil environment. Amplified sound of any kind, at any time of day, would be incompatible with the normal activity of these parks. Unlike signs and displays, it cannot be limited to certain areas of the park; by its very nature, amplified sound reaches well beyond its point of origin. Thus, the Court finds that the ban on sound amplification within the park is narrowly tailored to meet the government's legitimate interests.

■ With regard to the total ban of signs, displays and exhibits imposed by former Rule 16D–2.008, however, the Court agrees with the plaintiffs that this regulation cannot possibly be seen as narrowly tailored. The Court is mindful of the fact that signs, displays, and exhibits in certain areas of the park may interfere with the state's interest in preserving the park's aesthetics and providing visitors with the opportunity to experience the "untouched Florida landscape." However, the Court is not convinced that these forms of expression will be equally intrusive in all areas of the park. Undoubtedly, there are certain sections of the park, such as the parking lots or concession areas, where maintenance of a "natural environment" is not a priority. Thus, the state could have protected its interests by adopting a narrowly tailored rule, which restricts the use of signs, displays, and exhibits to certain areas of the park.

■ The Court also agrees with the plaintiffs that the permit requirement of former and amended Rule 16D–2.007(1) is not narrowly tailored, because it vests too much discretion in park managers. It is well established that "a law subjecting the exercise of First Amendment freedoms to the prior

restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham, Alabama,* 394 U.S. 147, 150–151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Undoubtedly, the rules challenged by the plaintiffs in this case are a far cry from the permit ordinances considered in most cases where the courts have found insufficient standards for issuance. Nevertheless, certain provisions of former and amended Rule 16D–2.007(1) lack sufficiently objective and definite standards, and allow the park manager to exercise a considerable amount of discretion.

For example, the regulations provide that park managers may deny permits for distribution of literature if "the distribution will present a clear and present danger to the public health or safety," or if it "will unreasonably impair the atmosphere of peace and tranquility," or if it "would unreasonably interfere with any program activities or administrative functions of the division." These provisions for denial of a permit are somewhat vague, and require park managers to make individualized judgments about the nature of a demonstration. Such regulations bestow too much discretion upon park managers, and therefore pose a danger that permits may be denied based upon the content of a demonstrator's message. *See Miami Herald Pub. Co. v. City of Hallandale,* 734 F.2d 666, 675 (11th Cir.1984).

Moreover, the permitting regulations challenged by the plaintiffs lack procedural safeguards which would ensure against abuse of the park manager's discretion. *See Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Shuttlesworth v. City of Birmingham, Alabama,* 394 U.S. 147, 161–164, 89 S.Ct. 935, 944–45 (Harlan, J., concurring); *Fernandes v. Limmer,* 663 F.2d 619 (5th Cir.1981). In *Freedman v. Maryland,* the Supreme Court was confronted with a motion picture censorship statute which required film exhibitors to first submit their films to the State Board of Censors to obtain a license before the film could be distributed. Recognizing that the administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected

speech, the Supreme Court held that a non-criminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. To protect exhibitors from unduly cumbersome and time-consuming procedures, which in many cases would effectively render the censor's determination final, the Supreme Court required that: (1) the state initiate judicial action to restrain exhibition of the challenged film and bear the burden of proof; (2) the exhibition of the film not be delayed by a protracted review process; and (3) judicial review be prompt. *Freedman,* 380 U.S., at 56–60, 85 S.Ct., at 738–739.

■ Because the regulations at issue here have so little in common with the classic "prior restraint," and do not present any of the "dangers of a censorship system," the Court does not believe the full procedural protections set forth in *Freedman* are required. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 228, 110 S.Ct. 596, 606, 107 L.Ed.2d 603 (1990) (Plurality opinion). However, the following procedural safeguards are essential: (1) the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained; and (2) there must be the possibility of prompt review in the event that the license is erroneously denied. *Id.* The permitting procedure challenged in this case provides for neither of these safeguards.

Whereas both the former and amended versions of Rule 16D–2.007 vest park managers with untoward discretion to deny permits, and fail to provide safeguards adequate to ensure against abuse of that discretion, the Court finds that these regulations are facially unconstitutional.

**B. Qualified Immunity**

■ Finally, the Court must determine whether defendant Fillyaw is entitled to qualified immunity with respect to the claims against him in his individual capacity. Public officials are immune in their individual capacities from suits for damages "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The Eleventh Circuit has expressed the *Harlow* standard as two requirements. *Naturist,* 958 F.2d. 1515, at 1523. First, the public official must show that the acts complained of were "within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* Once the defendant public official has satisfied this burden, the burden then shifts to the plaintiff to show that the public official's actions "violated clearly established constitutional law." *Id.* (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988)).

■ That the defendant's acts were "within the scope of his discretionary authority" is not disputed. With regard to the second requirement, the plaintiff has not shown that defendant Fillyaw's actions "violated clearly established law." In this case, applicable law was certainly not well settled to the degree that defendant Fillyaw should have reasonably known that his actions would violate the plaintiffs' rights.

First Amendment cases generally involve a delicate balancing of the government's interests against the rights of the individual, the resolution of which is often fact specific and not foreseeable. That there existed a significant degree of uncertainty with regard to applicable law cannot be denied in this case. This uncertainty is manifested by the procedural history of the case: this Court's original opinion, followed by the Eleventh Circuit's affirmance in its initial opinion, and then its reversal upon rehearing. A public official certainly cannot be expected to be more knowledgeable than the courts with regard to the complexities of constitutional law. Moreover, the Court finds that Fillyaw acted reasonably in light of the state of the law. He promptly granted the plaintiffs a permit to demonstrate in a central location of the park during peak visiting hours.

Accordingly, the Court concludes that defendant Fillyaw is entitled to qualified immunity with respect to the claims against him in his individual capacity. Therefore, defendant Fillyaw is immune from liability under Counts I and III of the plaintiff's second amended complaint, to the extent that he was being sued as an individual for an award of damages.

For the reasons stated above, the Court finds that there are no genuine issues of material fact outstanding, and disposition by summary judgment is appropriate. Accordingly, having reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** as follows:

(1) The plaintiffs' Second Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. As to Counts I, II, and III of the second amended complaint, summary judgment is hereby **GRANTED** against defendant Fillyaw in his official capacity, and in favor of the plaintiffs. The Court finds that former and amended Rule 16D–2.007(1) of the Florida Administrative Code is unconstitutional on its face. The Court further finds that former Rule 16D–2.008 of the Florida Administrative Code is unconstitutional on its face and as applied to the plaintiffs in this case.

(2) The defendant's Second Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Summary judgment is hereby **GRANTED** against the plaintiffs, and in favor of defendant Fillyaw in his individual capacity, as to all counts of the plaintiffs' second amended complaint. Further, summary judgment is **GRANTED** against the plaintiffs, and in favor of defendant Fillyaw in his official capacity, as to Count IV of the plaintiffs' second amended complaint.

(3) The plaintiffs shall file a proposed form of judgment for entry in this cause within fifteen (15) days from the date of this Order.

**DONE AND ORDERED.**